T.C. Memo. 2004-28

UNITED STATES TAX COURT

GEORGE MACIEL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7802-00.                    Filed February 4, 2004.

<u>David M. Kirsch</u>, for petitioner.

<u>G. Michelle Ferreira</u> and <u>Charlotte A. Mitchell</u>, for
respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent determined deficiencies in
petitioner's Federal income taxes and penalties pursuant to
section 6663[1] as follows:

---

[1]Unless otherwise indicated, all section references are to
                                        (continued...)

| Year | Deficiency | Penalty Sec. 6663 |
|------|------------|-------------------|
| 1990[1] | $192,954 | $144,715.50 |
| 1991 | 71,337 | 53,502.75 |
| 1992 | 56,075 | 42,056.25 |

[1]The notice of deficiency for 1990 states the amounts listed above.  In his answer, respondent decreased the deficiency amount and fraud penalty for 1990 to $172,655 and $129,491.25, respectively.

After concessions,[2] the issues to be decided for 1990, 1991, and 1992, are as follows:

(1) Whether, and to what extent, petitioner received and failed to report income;

(2) whether petitioner is entitled to various adjustments to reconstructed income not claimed on his returns;

_____

[1](...continued)
the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Respondent concedes that for 1990, petitioner is entitled to deduct $64,679 in expenses associated with the Tri-City Truck Parts partnership, and petitioner concedes that his distributive share of income from Tri-City Truck Parts is $41,105.  Respondent concedes that the sec. 6663 penalty for 1990 does not apply to the tax attributable to the Tri-City Truck Parts and Equipment (Tri-City) adjustment of $41,105.  Additionally, respondent concedes petitioner's entitlement to a partnership loss deduction for the BAMA Equipment partnership of $26,046 for 1991 and a loss deduction of $8,777 for 1992.  Similarly, petitioner agrees that he is not entitled to a casualty loss deduction of $25,020 on his Schedule A, Itemized Deductions, for 1992.  Respondent agrees that the fraud penalty does not apply to tax attributable to this adjustment.

At trial, the parties stipulated that petitioner's share of the rental income from PSB Trucking with regard to the Boscell Road property for 1990 is $46,200, rather than the amount petitioner reported, $50,400.  On brief, respondent concedes that petitioner is entitled to a capital loss of $3,000 for 1992, with respect to the BAMA Equipment partnership.

(3) whether petitioner intentionally failed to report income in an effort to fraudulently evade the payment of taxes; and

(4) whether respondent's assessment of deficiencies and penalties is barred by the period of limitations.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulations of facts, and the attached exhibits are incorporated herein by this reference. Petitioner resided in Santa Clara, California, at the time he filed the petition.

A. General Background

Petitioner has been involved in the trucking business for more than 20 years. During the years at issue, petitioner was the sole shareholder, president, and chief executive officer of Alviso Rock, Inc. (Alviso), a corporation organized and existing under the laws of the State of California. Alviso was a trucking and hauling business located in Newark, California. Additionally, during the aforesaid period, petitioner was the general manager of George Maciel Trucking, Inc. (GMT), a wholly owned subsidiary of Alviso. Alviso and GMT were C corporations that reported their consolidated income on Forms 1120, U.S. Corporation Income Tax Return, for the taxable years ending November 20, 1989, 1990, 1991, 1992, and 1993.

In addition to Alviso and GMT, petitioner engaged in the following noncorporate business activities.

B.    The BAMA Partnership

In 1989, petitioner entered into a partnership with Michael D. Mitchem named BAMA Equipment (BAMA).   BAMA was engaged in the business of selling new and used trucks.  Petitioner owned a 50-percent interest in BAMA.

During the years in issue, BAMA wrote numerous checks to petitioner and/or his related corporation(s), which he deposited into noncorporate bank accounts over which he had signatory authority.  BAMA paid petitioner rent for the use of one of his real properties, which he deposited into the aforesaid bank accounts.  BAMA was also a sponsor of petitioner's racing business.[3]

On his 1991 and 1992 returns, petitioner claimed deductions for passthrough losses from BAMA of $56,786 and $8,777, respectively.  For those years, petitioner's capital accounts in BAMA were negative $26,046 and $34,823, respectively.  As previously stated, respondent concedes loss deductionss for 1991 and 1992 of $26,046 and $8,777, respectively.  Additionally, respondent concedes petitioner's capital loss deduction of $3,000 for 1992.

BAMA dissolved in 1992.

---

[3]Petitioner's racing business is discussed in detail below.

C.   Tri-City Truck Parts and Newark Wreckers

In 1987, petitioner and Peter Viviano (Mr. Viviano) formed M&V Investments of which each owned a 50-percent interest.[4]  On April 14, 1987, M&V Investments purchased a company named Tri-City Truck Parts and Equipment (Tri-City) for $350,000.  The seller, Raymound Giarrusso (Mr. Giarrusso), took back a $200,000 note from petitioner and Mr. Viviano with the balance of the purchase price, $150,000, being paid in cash.  At the same time, M&V Investments purchased Newark Wreckers, Inc. (Newark Wreckers), from Mr. Giarrusso for $50,000, for which each partner paid $25,000.  Accordingly, for the two purchases, each partner contributed $100,000 and was personally liable under the $200,000 note payable to Mr. Giarrusso.

For each of the taxable years 1987 through 1990, Newark Wreckers filed Forms 1120.  Petitioner was a 50-percent shareholder and president of Newark Wreckers from 1987 through 1989.  Likewise, Tri-City timely filed Forms 1065, U.S. Partnership Return of Income, for each of the years 1987 through 1990.  Petitioner was a 50-percent income and loss partner of Tri-City.

---

[4]The parties characterize petitioner's relationship with Mr. Viviano as a "limited partnership".  However, there is no indication that the parties entered into a formal limited partnership or that partnership returns were filed for the years at issue.

On April 27, 1990, petitioner sold his 50-percent interest in M&V Investments (Tri-City and Newark Wreckers) to Mr. Viviano for $200,000. The $200,000 purchase price was paid in the form of three cashier's checks for $100,000, $75,000, and $25,000, which were initially made payable to Mr. Viviano but were subsequently endorsed to petitioner. Pursuant to the sales agreement, petitioner relinquished all claims he had in Tri-City and Newark Wreckers, and he was discharged from his obligation to pay on the note to Mr. Giarrusso.[5] Petitioner did not report this sale on his 1990 return.[6]

---

[5]The Escrow Statement, Bulk Transfer Escrow Instructions, and Security Agreement list petitioner's and Mr. Viviano's indebtedness to Mr. Giarrusso as $200,000. The 1990 Schedule L, Balance Sheet, for Tri-City lists the indebtedness as $202,000. Respondent describes petitioner's indebtedness as being $101,000. We assume respondent used the $101,000 as opposed to the $100,000 on the basis of Tri-City's 1990 Schedule L. We further assume a scrivener's error on the part of Tri-City's tax return preparer for 1990 and assign no substantive significance to this discrepancy.

[6]Petitioner did, however, attach a statement to his 1990 income tax return which states:

> THE ABOVE NAMED TAXPAYER WAS INVOLVED IN A
> PARTNERSHIP FOR PART OF THE 1990 TAX YEAR. THE
> PARTNERSHIP WAS TRI-CITY TRUCK PARTS. THE
> TAXPAYER DID NOT RECEIVE HIS SCHEDULE K-1 (SHARE
> OF PARTNERSHIP INCOME & DEDUCTIONS) FOR 1990.
> SEVERAL ATTEMPTS WERE MADE TO REACH THE DESIGNATED
> PARTNER OF TRI-CITY TRUCK PARTS (PETER VIVIANO).
> ALL ATTEMPTS WERE UNSECCESSFUL [sic]. AS A RESULT
> THE ABOVE NAMED TAXPAYER WAS UNABLE TO REPORT HIS
> SHARE OF THE PARTNERSHIP'S ACTIVITY FOR THE 1990
> TAX YEAR.

(continued...)

During 1987 through 1990, Mr. Viviano and petitioner made several short-term loans/advances to Tri-City and Newark Wreckers.  There were no formal loan agreements created to evidence these transactions.  The parties followed the practice of immediately repaying themselves when the entities were able, usually within 3 weeks to 3 months.  Petitioner alleges that he has never been repaid at least $56,450 in loans and advances, and he now contends that this amount offsets any gain he realized upon the sale of M&V Investments to Mr. Viviano.

D.  <u>Newark Truck and Body Shop</u>

With part of the funds secured from Mr. Viviano, in May 1990, petitioner purchased land and a vacant building located at 7373 Wells Avenue, in Newark, California, from Mr. Guarrusso for $200,000.  Upon receipt of the three cashier's checks from Mr. Viviano totaling $200,000, petitioner purchased two cashier's checks made payable to himself, one for $175,000 and the other for $25,000.  On May 16, 1990, petitioner took the $175,000 cashier's check made payable to himself and purchased two more cashier's checks.  One of the cashier's checks was for

---

[6](...continued)
The date listed next to petitioner's signature on his 1990 income tax return is Aug. 14, 1991.  The date listed on Tri-City's 1990 tax return is Dec. 21, 1991.  There is no indication in the record that petitioner filed an amended return for 1990.  There is no indication that petitioner has ever reported this sale of his interest.  Petitioner testified that he believed that he had reported the sale.

$127,504.82 and made payable to Fidelity National Title, apparently the escrow agent for the purchase of 7373 Wells Avenue, and a second cashier's check was for $47,495.18 and made payable to petitioner.  On June 11, 1990, petitioner deposited the second cashier's check for $47,495.18 and the $25,000 cashier's check purchased with the funds received from Mr. Viviano into Bank of Milpitas account No. 512-001-300466.

During the years at issue, petitioner conducted an unincorporated business from the 7373 Wells Avenue location named Newark Truck and Body (Newark T&B).[7]  Newark T&B was engaged in the business of truck repair for petitioner's related businesses and for unrelated third parties.  Petitioner was the sole owner of Newark T&B.  Newark T&B had its own invoices and business cards.  Newark T&B performed truck repairs work for which it received remuneration.  Petitioner maintained a bank account at the Bank of Milpitas, account No. 512-001-300466, in the name of "George A. Maciel c/o Newark Truck & Body".

Petitioner garnered significant funds from the Newark T&B activity.[8]  Petitioner did not report any of the moneys that Newark T&B received for repair services on his 1990, 1991, or

---

[7]Petitioner initially characterized Newark T&B as an "activity".  At trial, petitioner admitted this "activity" was a business.

[8]On brief, petitioner concedes that total deposits attributable to Newark T&B for the 3-year period were $123,953.77.

1992 returns.[9]  Petitioner's accountants were not aware of Newark T&B until after the Internal Revenue Service (IRS) commenced its audit and investigation.  Alviso/GMT's bookkeeper was also unaware of the Newark T&B business operations.

E.  Petitioner's Racing Business

During the years at issue, petitioner maintained an unincorporated automobile racing business under the name "Alviso Rock/HK Racing".[10]  Petitioner was the sole owner of this business.  During the years at issue, petitioner maintained a bank account at the Bank of Milpitas, account No. 512-001-102605, in the name "Alviso Rock/HK Racing".  During the years indicated, petitioner received the following amounts of racing income, which he deposited into the aforementioned bank account:

| Description | 1990 | 1991 | 1992 |
| --- | --- | --- | --- |
| Deposits | $16,811.57 | $14,397 | $31,493.96 |
| Less: nontaxables[1] | (4,125.34) | (4,334) | (20,144.00) |
| Net racing income | 12,686.23 | 10,063 | 11,349.96 |

[1] The parties stipulated the above nontaxable deposits.

The funds were received from, inter alia, sponsors[11] and/or winnings.

---

[9]Petitioner argues that unclaimed expense deductions and advances/loans substantially offset income that Newark T&B earned.

[10]Initially, petitioner characterized this endeavor as an "operation", but he admitted at trial that this "operation" was a business.

[11]Petitioner's related businesses, Alviso, GMT, and BAMA, were among the sponsors.

Petitioner did not report any of the above-listed deposited funds on his 1990, 1991, or 1992 returns.  Furthermore, petitioner's accountants were not aware of this business activity until after the IRS commenced its audit and investigation.[12]

F.  Rental Property Income

During 1990, 1991, and 1992, petitioner owned and held numerous real properties for investment and lease.  One such property was located at 41550 Boscell Road, Fremont, California (the Boscell property).  In 1990, petitioner owned 50 percent of the Boscell property with Thomas Viviano.  In May 1991, Thomas Viviano sold his 50-percent interest in the Boscell property to petitioner.

During the years at issue, the Boscell property was leased to two tenants.  One tenant, PSB Trucking, rented space at the Boscell property for $8,400 per month.  Petitioner reported rental income attributable to PSB Trucking of $50,400,[13] $79,800, and $100,800 for 1990, 1991, and 1992, respectively.

---

[12]Petitioner argues that if unclaimed expense deductions are considered, his racing business lost money.

[13]At trial, the parties stipulated that petitioner's share of the rental income from PSB Trucking with regard to the Boscell Road property for 1990 is $46,200, rather than the amount petitioner reported, $50,400.  Respondent concedes that petitioner reported his proportionate share of the rental income attributable to PSB Trucking for 1991 and 1992.

A portion of the Boscell property was also rented to P.J. Vierra & Sons (P.J. Vierra) for $500 per month.  Petitioner did not report any of the rental income received from P.J. Vierra.[14]

In addition to the Boscell property, petitioner held numerous other real properties for rent.  One such property was located at 4842 Cabrillo Point, Byron, California.  This property was leased to Daniel Parquette.  Petitioner received and deposited rent payments from Daniel Parquette.  Other properties that petitioner owned included those located at and described as: 1300 State Street, 1573 State Street, 1252 State Street, 1243 State Street, Basset Lot (Santa Clara), 1594 Wabash Street, 1598 Wabash Street, 7373 Wells Avenue, 37243 Filbert Street (Lot), and Liberty Avenue.  In addition to the Boscell and 4842 Cabrillo Point properties, during 1990, 1991, and 1992, petitioner received and deposited into bank accounts over which he had signatory authority rental income from the following individuals and/or entities:  Charles and Rose Lamb, Piazza Mobile Sweeping, BAMA Equipment, Louis and Marion Bewley, James Morrow, Stockton Semi Trailer, Daniel Parquette, Daniel Estacio, Sines Trucking Co., Linda Venture, Neil and Betsy Holets, Margaret and Kevin Deemer, P.J. Vierra & Sons, PSB Trucking, J.S.J. Pipeline, Michel K. Pipes, Dad's Enterprises, Linda Venture, Margret or Kevin

---

[14]At trial, petitioner could not explain why the rental income received from P.J. Vierra was not reported.

Deemer, and Ricky and Ana Flores.  Petitioner claimed deductions on his Schedules E, Supplemental Income and Loss, for many of these real properties.

G.  Petitioner's Bank Deposits

During 1990, 1991, and 1992, petitioner deposited significant sums of money into seven noncorporate bank accounts over which he had signatory authority.[15]  The bank accounts were maintained in the following names:  (1) Bank of Milpitas, account No. 512-001-200593 "George A. Maciel;" (2) Bank of Milpitas, account No. 512-001-300466 "George A. Maciel c/o Newark Truck & Body;" (3) Bank of Milpitas, account No. 512-001-303171 "GM Investments;" (4) Bank of Milpitas, account No. 512-001-102605 "Alviso Rock/HK Racing;" (5) Wells Fargo Bank, account No. 0108-363904 "George Maciel" and "Peter Viviano;" (6) Wells Fargo Bank, account No. 0500-325774 "George A. Maciel;" and (7) Wells Fargo Bank, account No. 6500-059183 "George Maciel."  Generally, these deposits fall into one of four categories.  The first category is checks made payable to either Alviso or GMT, yet endorsed and deposited into noncorporate bank accounts over which petitioner had signatory authority.  An example is check No. 35286, made payable to Alviso for $7,500, the payor of which is Sutter Insurance Co. and check No. 426 for $13,000 made payable to GMT,

_____

[15]The record reflects deposits of more than $1.8 million for the 3-year period; that is, $715,484.75, $412,514.76, and $757,186.94, for 1990, 1991, and 1992, respectively.

the payor of which is Daniel Hernandez.  Both of these checks are made payable to Alviso or GMT yet deposited into Bank of Milpitas account No. 512-001-300466.  The second category represents workmen's compensation insurance refund checks made payable to Alviso or GMT and deposited into noncorporate bank accounts over which petitioner had signatory authority.  For example, on or about July 31, 1992, Republic Indemnity Co., refunded Alviso $57,472, which petitioner deposited into Bank of Milpitas account No. 512-001-300466.  The third category is payments made to petitioner from his related entities.  An example of such a payment is check No. 4153 for $2,476.06 made payable to petitioner from GMT.  Lastly, there are substantial sums of cash and their equivalent deposited into noncorporate bank accounts over which petitioner had signatory authority.  For example, on June 19, 1990, petitioner deposited $15,000 in traveler's checks into Bank of Milpitas account No. 512-001-300466.  Likewise, on July 18, 24, and 26, 1990, petitioner deposited cash into this same bank account in the respective amounts of $9,600, $9,700, and $9,800.

After depositing some of the aforementioned moneys, petitioner wrote checks to Alviso or GMT noting on the checks that these payments were loans.  For example, on or about November 19, 1990, Transamerica Insurance Group issued a check payable to Alviso for $67,256.  On December 13, 1990, petitioner

deposited this check into Bank of Milpitas, account No. 512-001-300466.[16]  On that same day, petitioner wrote a check from this account to GMT for $50,000 and indicated on the memo line "loan to GMT".  The corporation's bookkeeper made a handwritten notation, which reads "Art [the accountant]- George put this money out of pocket - don't credit as income.  We're going to pay our line of credit monthly out of this account, Yvonne" on GMT's bank statement for the account into which the $50,000 check was deposited

Similarly, on or about June 28, 1991, Republic Indemnity Co. issued GMT a check for $42,887.  On July 9, 1991, petitioner deposited this check into Bank of Milpitas, account No. 512-001-300466.  On that same day, petitioner wrote two checks from this bank account, one for $30,000 to GMT and one for $10,000 to Alviso.  Petitioner wrote "loan" on the memo line of both checks.  This same treatment occurred with a $57,472 check to Alviso received from Republic Indemnity Co.  Petitioner also deposited this check into Bank of Milpitas account No. 512-001-300466.  On or about June 4, 1992, petitioner wrote a check to GMT for $45,000, noting "Loan for Ins." on the memo line.[17]

---

[16]Petitioner testified that $17,000 of this money was used to purchase truck parts from a third party, Peterbilt.  The truck parts were purchased in the name of Newark T&B.

[17]Petitioner testified that he was not sure whether by depositing the Alviso check he was reimbursing himself for a loan
(continued...)

After making the above-described deposits, Alviso and GMT booked some of these "loans" as indebtedness owed to petitioner. The general ledger for Alviso/GMT for the fiscal year ending November 1992, shows the note payable balance to petitioner as $105,000, which consists of three of the four checks petitioner wrote to the corporations and designated as "loans". The $105,000 note payable balance consists of the following checks written on Bank of Milpitas, account No. 512-001-300466:

| Date of check | Amount | Payee | Check No. |
|---------------|--------|-------|-----------|
| 12/13/90 | $50,000 | GMT | Check |
| 7/9/91 | 10,000 | Alviso | 159 |
| 6/4/92 | 45,000 | GMT | 195 |

Petitioner testified that the designation "loan" for the $50,000 check was placed on the check to dissuade his sister from filing a lawsuit against him questioning his ownership rights to the businesses. Petitioner testified that he artificially designated checks as loans to his corporations as a "smoke screen" to his sister. At trial, petitioner claimed he did not intend for many of his checks to be designated as loans for which he was to be repaid.

---

[17](...continued)
to the corporation for the insurance.

H.   Bank Accounts and Reported Income

During the years at issue, funds were deposited into noncorporate bank accounts over which petitioner had signatory authority as follows:[18]

1. Bank of Milpitas, account No. 512-001-200593,[19] in the name of "George A. Maciel":

| Year | Deposits |
|------|----------|
| 1990 | $105,340.39 |
| 1991 | 106,995.75 |
| 1992 | 94,272.80 |

2.   Bank of Milpitas, account No. 512-001-300466,[20] in the name of "George A. Maciel c/o Newark Truck & Body":

| Year | Deposits |
|------|----------|
| 1990 | $516,524.02 |
| 1991 | 241,243.77 |
| 1992 | 509,494.83 |

3. Bank of Milpitas, account No. 512-001-303171,[21] in the name of "GM Investments":

---

[18]Attached hereto and incorporated herein are appendices A, B, C, D, and E, which detail the described deposits as agreed by the parties.  Additionally, attached hereto and incorporated herein as appendix F is a stipulated schedule listing nontaxable deposit items.

[19]Appendix A details the deposits made into this bank account for the years at issue.

[20]Appendix B details the deposits made into this bank account for the years at issue.

[21]Appendix C details the deposits made into this bank account for the years at issue.

| Year | Deposits |
|------|----------|
| 1991 | $49,811.07 |
| 1992 | 121,885.27 |

4.  Bank of Milpitas, account No. 512-001-102605,[22] in the name of "Alviso Rock/HK Racing":

| Year | Deposits |
|------|----------|
| 1990 | $16,811.57 |
| 1991 | 14,397.00 |
| 1992 | 31,493.96 |

5.  Wells Fargo Bank, account No. 0108-363904,[23] in the names of "George Maciel" and "Peter Viviano":

| Year | Deposits |
|------|----------|
| 1990 | $76,463.54 |

6.  Wells Fargo Bank, account No. 0500-325774, in the name of "George A. Maciel":

| Year | Deposits |
|------|----------|
| 1990 | $4.72 |

7.  Wells Fargo Bank, account No. 6500-059183, in the name of "George Maciel":

| Year | Deposits |
|------|----------|
| 1990 | $340.51 |
| 1991 | 67.17 |
| 1992 | 40.08 |

---

[22]Appendix D details the deposits made into this bank account for the years at issue.

[23]Appendix E details the deposits made into this bank account for the year at issue.

The parties stipulated the above sums for the years at issue. Additionally, the parties agreed that the above-described deposits included $328,286.83, $74,180.81, and $407,639.68 of nontaxable items for 1990, 1991, and 1992, respectively.[24] Thus, the total deposits and agreed nontaxable deposits[25] for the years at issue were:

|  | 1990 | 1991 | 1992 |
|---|---|---|---|
| Total deposits | $715,484.75 | $412,514.76 | $757,186.94 |
| Nontaxable deposits | (328,286.83) | (74,180.81) | (407,639.68) |
| Net | 387,197.92 | 338,333.95 | 349,547.26 |

The following chart illustrates the total amount and categories of moneys that petitioner received and reported on his returns:

|  | 1990 | 1991 | 1992 |
|---|---|---|---|
| Net wages[1] | $59,642.28 | $59,590.17 | $54,653.28 |
| Taxable interest | 16,872.00 | 16,131.00 | 6,595.00 |
| Taxable refunds of state and local income taxes | 3,985.00 | 1,499.00 | -- |
| Gross rents, royalties, etc. | 93,423.00 | 125,683.00 | 140,600.00 |
| Other income[2] | 6,000.00 | -- | -- |
| Total | 179,922.28 | 202,903.17 | 201,848.28 |

[1] "Net wages" was calculated by reducing gross wages by Federal income tax withheld, Social Security tax withheld, and State and local income taxes withheld.
[2] This amount was reported in Statement 1 as "Cabrillo Point" on petitioner's 1990 return.

---

[24] See supra note 18.

[25] In the stipulation, petitioner reserved the right to present additional evidence regarding nontaxable items deposited.

Petitioner also wrote checks made payable to "cash" from his noncorporate bank accounts over which he had signatory authority. For example, in 1990, petitioner wrote the following checks to cash from Bank of Milpitas, account No. 512-001-300466:

| Date of Check | Check No. | Amount |
|---|---|---|
| 3/20/90 | 109 | $9,645.00 |
| 4/17/90 | 112 | 9,741.50 |
| 4/27/90 | 118 | 8,697.50 |
| 4/27/90 | 117 | 9,750.00 |
| Total | | 37,834.00 |

At trial, petitioner could not recall the purpose for, or use of, these funds.[26]

## I. Petitioner Pled Guilty to Criminal Charges

On September 23, 1998, petitioner was charged with two counts of knowingly filing false Federal income tax returns for 1991 and 1992 in violation of 26 U.S.C. sec. 7206(1) (2000).[27] On January 13, 1999, petitioner entered a guilty plea to the aforesaid charges and was sentenced to, inter alia, 36 months of probation. In pleading guilty, petitioner admitted that he

---

[26]Petitioner included copies of the checks as part of his exhibits. Since petitioner cannot recall for what these amounts were expended, he is not now claiming them as adjustments to reconstructed income.

[27]In United States of Am. v. George Maciel, case No. 98-20085-JF, U.S. District Court for the Northern District of California, petitioner was charged with willfully making a return he did not believe to be true and accurate; he willfully omitted the correct amount of income from his return, understating his income by $78,454 and $75,587 for 1991 and 1992, respectively. The information alleged he understated his income tax liability by $19,299 and $10,377 for 1991 and 1992, respectively.

"willfully" made and signed his 1991 and 1992 individual tax returns that he "did not believe" [were] "true and correct" [and] "willfully omitted true and correct information concerning" [his] "income, knowing then that" he "had additional reportable income" of $78,454 and $75,587 for 1991, and 1992, and that there was additional tax due and owing on this additional income of $19,299 and $10,377 for 1991 and 1992, respectively.

J.   Significant Events in Petitioner's Life

Before and during the years at issue, petitioner encountered a series of stressful events.  These events included the following:  Two of his friends/employees died; his and his girlfriend's child was stillborn; his friend and financial adviser broke his neck and became a quadriplegic; his former brother-in-law died in a motorhome fire outside of petitioner's office; he was sued in connection with an accident between one of petitioner's trucks and a police officer; and his mother was diagnosed with lung cancer.

OPINION

Respondent determined that during 1990, 1991, and 1992, petitioner engaged in a scheme to divert income from his business activities and thereby failed to report substantial earnings on his income tax returns in order to fraudulently evade the payment of tax.  Petitioner does not dispute that he underreported income.  Petitioner's argument centers on his state of mind and

that "any inaccuracies in his tax returns were caused by extraordinary stresses and distractions he experienced, not an intent to evade taxes."  For the reasons detailed below, we uphold respondent's deficiency determinations, with some modifications, and find that petitioner fraudulently intended to evade the payment of his tax liabilities for 1990, 1991, and 1992.

The first question we address is whether there is a deficiency.  The Commissioner's determination of tax liability is presumptively correct, and the taxpayer bears the burden of showing that the determination is erroneous.[28]  Zack v. Commissioner, 692 F.2d 28 (6th Cir. 1982), affg. T.C. Memo. 1981-700; see DiLeo v. Commissioner, 96 T.C. 858, 871 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978).[29]

A.   The Amount of the Deficiency

1.   Unreported Income

Section 61(a) defines gross income as "all income from whatever source derived".  Every person liable for any tax must

[28]"This presumption of accuracy does not change merely because the case requires a subsidiary inquiry into the question of fraud."  Zack v. Commissioner, 692 F.2d 28, 29 (6th Cir. 1982), affg. T.C. Memo. 1981-700.

[29]Petitioner disputes respondent's calculations of how much income he failed to report.  He argues also that to the extent he omitted income, he is entitled to decrease his taxable income by the amount of unclaimed deductions and adjustments.

maintain books and records sufficient to establish the amount of his gross income. Sec. 6001; DiLeo v. Commissioner, supra at 867. The Secretary is authorized to reconstruct income in accordance with any reasonable method that accurately reflects actual income. Secs. 446(b), 6001; Petzoldt v. Commissioner, 92 T.C. 661, 687 (1989); Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965). The reconstruction of a taxpayer's income need only be reasonable in light of all surrounding facts and circumstances. Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970); Schroeder v. Commissioner, 40 T.C. 30, 33 (1963).

To reconstruct petitioner's gross income, respondent utilized both the specific items and bank deposits methods. The specific items and bank deposits methods of income reconstruction have long been sanctioned by the courts. Clayton v. Commissioner, 102 T.C. 632, 645 (1994); Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). "If the taxpayer feels that the Government's method of computation is unfair or inaccurate, the burden is on him to show such unfairness or inaccuracy." DiLeo v. Commissioner, supra at 871.

(a) Specific Items of Unreported Income From Petitioner's Sale of Tri-City Truck Parts and Newark Wreckers

Petitioner held his interests in Tri-City and Newark Wreckers under the name M&V Investments. As found above,

petitioner sold his interest in M&V Investments on April 27, 1990. Respondent calculated petitioner's income from the sale of M&V Investments for 1990, using the specific items method of income reconstruction. To the extent that petitioner deposited proceeds from this sale to bank accounts over which he had signatory authority, those deposits were treated as nontaxable in respondent's bank deposits analysis.

Respondent calculated petitioner's basis and gain on the sale of the interest as follows:

| Calculation of Adjusted Basis | Newark Wreckers | Tri-City |
|---|---|---|
| Original cost | $25,000 | $75,000 |
| Addl. Capital Contributed or Withdrawn | | |
| 1987 | -- | 5,000 |
| 1988 | -- | (5,000) |
| 1989 | -- | 110,231 |
| 1990 | -- | (2,667) |
| Petitioner's Share of Pship. Income/(Loss) | | |
| 1987 | -- | (22,603) |
| 1988 | -- | (78,505) |
| 1989 | -- | (115,377) |
| 1990 | -- | (5,881) |
| 1990 (stipulation)[1] | | 41,105 |
| Subtotal | 25,000 | 1,303 |
| Petitioner's share of pship. debt | | [2]101,000 |
| Adjusted basis | 25,000 | 102,303 |
| Total combined basis | | 127,303 |

| Description of Item | Calculation of Amount Recognized on Sale |
|---|---|
| Cash from Viviano | $200,000 |
| Relief from pship. debt | 101,000 |
| Total amount realized | 301,000 |
| Less total basis | (127,303) |
| Amount recognized | 173,697 |

[1]On brief, the parties explained that respondent audited and initially disallowed all expense deductions for Tri-City's 1990 taxable year. The parties stipulated that petitioner's income inclusion from Tri-City for 1990 was $41,105.

We agree that this inclusion of income increased petitioner's basis. Subch. K of the Code governs basis in a partnership. Sec. 705 details how to calculate basis. Specifically, a partner's basis in his partnership interest is increased by, inter alia, the amount of his distributive share of taxable income. Sec. 705. Thus, to the extent petitioner recognized additional income as a result of the adjustment to Tri-City, he is also entitled to an upward adjustment of his basis in Tri-City. Respondent's and petitioner's calculations correctly incorporate the increase in basis due to the additional income inclusion.

[2]See supra note 5. The inclusion of the "extra" $1,000 is irrelevant, since it increases the basis and likewise increases the amount realized.

One difference between petitioner's and respondent's calculation of unreported income from this sale is whether the inclusion of petitioner's relief from partnership debt under the sales agreement should be included as part of the sale proceeds. We believe that respondent, in contrast to petitioner, correctly includes, as an amount realized, that portion of the liability of which petitioner is relieved by virtue of the sales agreement.[30] "If a partnership interest is sold or exchanged, the reduction in the transferor partner's share of partnership liabilities is treated as an amount realized under section 1001 and the regulations thereunder." Secs. 1.752-1(h), 1.1001-2(a), Income

[30]Petitioner argues that respondent incorrectly included petitioner's relief from indebtedness as an amount realized in the sale. It is clear that the amount of the indebtedness from which petitioner is relieved is included as an amount realized in the sale transaction, and likewise, petitioner's basis in partnership is increased by his proportionate share of the partnership liability. See secs. 705, 722, 752. Thus, the amount realized is equally offset by the basis increase.

Tax Regs. ("the amount realized from a sale or other disposition of property includes the amount of liabilities from which the transferor is discharged as a result of the sale or disposition").

Petitioner also alleges that he made $56,450 in loans/advances to Tri-City and Newark Wreckers for which he was never reimbursed. In support thereof, he introduced copies of checks made payable to the two entities that he alleges were unpaid "loans". Petitioner's business partner, Thomas Viviano, testified that each partner would periodically advance/lend funds to the entities on a short-term basis. There were no formal loan agreements made between the businesses and their owners. Mr. Viviano testified that it was the practice of the entities to immediately payback these "loans" as the entities earned income, usually within a few months. Petitioner, on the other hand, testified that at the time he sold his interests to Mr. Viviano, he was owed $16,200 from Tri-City and $40,250 from Newark Wreckers.

We find Mr. Viviano to be credible. Tri-City's 1989 Form 1065 shows that advances from partners went from $62,938 at the beginning of 1989 to $0 at the beginning of 1990. Thus, we find petitioner was not owed $16,200 from Tri-City at the time he sold his interest. Newark Wreckers is a different story. The 1989 and 1990 Forms 1120 for Newark Wreckers show a beginning and an

ending balance of advances by shareholders of $24,482 and $36,741, and $36,741 and $117,604, respectively. Petitioner submitted checks showing payments of $40,250 to Newark Wreckers. Most of these checks were written well before the sale transaction and according to Mr. Viviano would have been repaid. Two of the checks, however, were written on February 21 and March 16, 1990, for $2,500 and $5,000, respectively. Considering Mr. Viviano's testimony that the companies repaid shareholder advances within a few months of borrowing, we find it reasonable that Newark Wreckers owed petitioner $7,500 at the time of the sale. Thus, we find that respondent's determination of petitioner's income from this sale should evidence that in 1990, petitioner was still owed $7,500 from Newark Wreckers. However, we do not, in light of trial testimony, find it reasonable that Newark Wreckers owed petitioner the balance, $32,750.

(b). Petitioner's Income Reconstructed From Bank Deposits

Bank deposits constitute prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). This method of determining a taxpayer's income assumes that all the money deposited into a taxpayer's bank accounts during a specific period constitutes taxable income. Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964). Of course, "the Government must take into account any non-taxable source or deductible expense of which it has knowledge." Id. Furthermore, "The fact that the

Commissioner was not completely correct does not invalidate the method employed." DiLeo v. Commissioner, 96 T.C. at 868.

Respondent determined tax deficiencies for 1990, 1991, and 1992 in the respective amounts of $172,655,[31] $71,337, and $56,075. These deficiency amounts are attributable to respondent's reconstruction of petitioner's income for the years at issue. In utilizing the bank deposits method, respondent calculated petitioner's unreported income as follows:[32]

| Bank Acct. Deposits[1] | 1990 | 1991 | 1992 |
|---|---|---|---|
| Milpitas acct. 200593 | $105,340.39 | $106,995.75 | $94,272.80 |
| Milpitas acct. 300466 | 516,524.02 | 241,243.77 | 509,494.83 |
| Milpitas acct. 102605 | 16,811.57 | 14,397.00 | 31,493.96 |
| Milpitas acct. 303171 | -- | 49,811.07 | 121,885.27 |
| Wells Fargo 363904 | 76,463.54 | -- | -- |
| Wells Fargo 325774 | 4.72 | -- | -- |
| Wells Fargo 059183 | 340.51 | 67.17 | 40.08 |
| Total deposits | 715,484.75 | 412,514.76 | 757,186.94 |
| Add: Funds Not Deposited | | | |
| Cash back from deposits -acct. 200593 | 1,571.77 | -- | 500.00 |
| Cash back from deposits -acct. 300466 | 14,200.00 | $2,887.00 | 6,500.00 |
| Cash back from deposits -acct. 102605 | -- | -- | 160.00 |
| Boscell rent deposited into unknown acct. | 62,300.00 | 61,300.00 | -- |
| Total funds avail. | 793,556.52 | 476,701.76 | 764,364.94 |

---

[31]See supra page 2.

[32]On brief, petitioner admits that because of his criminal conviction he "is estopped to deny that he willfully omitted $78,454.00 and $75,587.00 of income from his 1991 and 1992 returns, respectively."

Less: Nonincome Items Deposited

| | | | |
|---|---|---|---|
| Nontaxable deposits[2] | (328,286.83) | (74,180.81) | (407,639.68) |
| Boscell rents allocable to Viviano | (49,200.00) | (22,250.00) | -- |
| | (377,486.83) | (96,430.81) | (407,639.68) |
| Taxable deposits | 416,069.69 | 380,270.95 | 356,707.26 |

Less: Deposits Resulting
From Reported Income

| | | | |
|---|---|---|---|
| Net wages | 59,642.28 | 59,590.17 | 54,653.28 |
| Interest income | 16,872.00 | 16,131.00 | 6,595.00 |
| State tax refund | 3,985.00 | 1,499.00 | -- |
| Gross rental income | 93,423.00 | 125,683.00 | 140,600.00 |
| Other income | 6,000.00 | -- | -- |
| Total | 179,922.28 | 202,903.17 | 201,848.28 |
| Additional unreported income | 236,147.41 | 177,367.78 | 154,858.98 |

[1] See appendices A, B, C, D, and E.
[2] See appendix F.

In arriving at the above stated figures, respondent used bank records, including deposit slips and checks showing that these amounts were deposited into petitioner's bank accounts. Generally, petitioner does not dispute these deposits, and respondent has established, by clear and convincing evidence, that petitioner underreported his income during the taxable years at issue. However, petitioner claims that he is entitled to adjustments in order to determine taxable income. Petitioner bears the burden of proof to show any adjustments which would offset unreported income. Barragan v. Commissioner, T.C. Memo. 1993-92, affd. without published opinion 69 F.3d 543 (9th Cir. 1995).

2.  Petitioner's Adjustments to Unreported Income
    Determined by Bank Deposits

In attacking respondent's income reconstruction, generally, petitioner argues that he is entitled to adjustments for unclaimed deductions of expenses and unreimbursed loans/advances with respect to his various business activities.[33]  He contends that these unclaimed adjustments substantially offset the income that respondent reconstructed.

(a) Petitioner's Alleged Loans/Advances

Petitioner argues that one of the primary adjustments to the amount of reconstructed income is unreimbursed loans/advances that he made to Alviso and GMT.[34]

Petitioner alleges that when he deposited insurance refund checks payable to Alviso and GMT into his personal bank accounts, he transferred portions of those refunds back to those corporations.  While this is true, as far as it goes, petitioner

---

[33]"[I]t is well settled- 'that evidence of unexplained receipts shifts to the taxpayer the burden of coming forward with evidence as to the amount of offsetting expenses, if any.'" Franklin v. Commissioner, T.C. Memo. 1993-184 (quoting Siravo v. United States, 377 F.2d 469, 473 (1st Cir. 1967)).

[34]However, it appears he was reimbursed for many of these alleged loans.  For example, compare petitioner's check No. 1086 from Bank of Milpitas, account No. 512-001-200593, dated Dec. 19, 1989, for $999 made payable to "DMV" and GMT's check No. 3895 dated Dec. 27, 1989, for $1,000 made payable to petitioner which states on the memo line "Reimburse for DMV fees".  Furthermore, petitioner's bookkeeper testified that petitioner's businesses customarily repaid such loans.  Additionally, petitioner testified that some of the checks he offered were not loans but represented his personal expenses.

characterized the transfers back as "loans" to his corporations. Petitioner did not report the receipt of the refunds as income, and because he characterized the transfer of these amounts to the corporations as loans, they would not be recorded as corporate income. And given that these transfers were characterized as loans, petitioner would be entitled to receive these amounts back from the corporations as nontaxable loan repayments. Under these circumstances, petitioner is not entitled to reduce his omitted income by the amounts that he recorded as "loans".

Petitioner also alleges that he advanced his personal funds to purchase parts and equipment for use by Alviso or GMT.[35] In support thereof, petitioner provides the Court with photocopies of checks made from bank accounts over which he had signatory authority.[36] In all, petitioner alleges that during the 3-year period, he advanced Alviso and GMT more than $120,000 for which he was never reimbursed. However, according to petitioner's brief, he is not absolutely sure of the purposes for some of

---

[35]For example, petitioner claims that in May 1990, he purchased a hood for $2,000 using his personal American Express card to pay for it. For support, petitioner presents only a photocopy of a check for $4,260 made payable to American Express. Petitioner admitted at trial that he wrote "Hood ? 2000" on the memo line of the check after the check had cleared his bank.

[36]For example, on Aug. 10, 1989, petitioner paid $321 to "DMV"; on Apr. 8, 1992, he paid $900 to "Rux Onito"; and on Aug. 3, 1992, he paid $1,250 to "Steve Micheles".

these expenditures.[37]  Additionally, some of the copies of checks
that petitioner provided are made payable to "cash" for
significant sums of money.[38]

Petitioner also alleges that he purchased vehicles for the
benefit of Alviso and GMT with his personal funds for which he
was not reimbursed.  However, he fails to provide copies of the
titles or any documentation which would demonstrate in whose
names the alleged vehicles were purchased.

Petitioner provides no evidence that he advanced/lent
substantial amounts of money to Alviso or GMT except copies of
canceled checks and his trial testimony.[39]  No payee testified as
to these expenditures.  There is no evidence of a repayment
schedule, maturity date, special rights and duties of the
parties, written memorialization of the debtor-creditor
relationship, etc.  On this record, we find that petitioner

---

[37]On brief, petitioner concedes that, to the extent he does
not know the purpose for the expenditure, he is not now arguing
that such expenditure is an adjustment to reconstructed income.

[38]For example, check No. 109 dated Mar. 20, 1990, for
$9,645; check No. 112 dated Apr. 17, 1990, for $9,741.50; check
No. 119 dated Apr. 30, 1990, for $9,847.00; check No. 118 dated
Apr. 27, 1990, for $8,697.50; and check No. 117 dated Apr. 24,
1990, for $9,750.00.  Despite providing the Court with copies of
the aforesaid checks, petitioner is now not claiming these checks
represent either advances or any other deductible business
expense.

[39]The record indicates that petitioner did not make any such
advances to Alviso or GMT.  The balance sheets included with
their 1990, 1991, and 1992 returns list "Loans from Stockholders"
as $0.

failed to show that these "advances" constituted expenditures giving rise to bona fide indebtedness.  But even if such expenditures were construed as loans to Alviso or GMT, they would not be deductible by petitioner or offset his income.

(b) Unclaimed Expenses

Generally, ordinary and necessary expenses paid or incurred in the carrying on of a trade or business are deductible by such individual engaged in the trade or business.  Sec. 162(a); sec. 1.162-1(a), Income Tax Regs.  The expenditure must be "directly connected with or pertaining to the taxpayer's trade or business".  Sec. 1.162-1(a), Income Tax Regs.  "The determination of whether an expenditure satisfies the requirements of section 162 is a question of fact."  Shea v. Commissioner, 112 T.C. 183, 186 (1999).  The taxpayer has the burden of proving that he is entitled to deductions.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934).

All deductible expenses are subject to substantiation. Secs. 274(d), 6001.  The general substantiation requirement is set forth in section 6001 and provides in pertinent part:  "Every person liable for any tax imposed by this title, or for the collection thereof, shall keep such records * * * and comply with such rules and regulations as the Secretary may from time to time

prescribe."[40]  The regulations provide that "any person subject to tax * * * shall keep such permanent books of account or records, * * * as are sufficient to establish the amount of * * * deductions".  Sec. 1.6001-1(a), Income Tax Regs.

In the event that a taxpayer establishes that a deductible expense has been paid, but he is unable to substantiate the precise amount, the Court may estimate the amount of such deduction bearing heavily against the taxpayer.[41]  Cohan v. Commissioner, 39 F.2d 540, 543-44 (2d Cir. 1930).  However, the Court cannot make such an estimate unless the taxpayer presents sufficient evidence to provide a reasonable basis upon which the estimate is made.  Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

### (i).  Deductibility of Petitioner's Alleged Expenses

#### (A).  Newark T&B Expenses

Petitioner claims that no expenses relating to Newark T&B were claimed as deductions.  Petitioner's argument centers on the real property he bought to conduct Newark T&B's business

---

[40]Strict substantiation is required for specific classes of expenses, including "listed property" described in sec. 280F(d)(4).  See sec. 274(d).

[41]The Court's ability to reasonably estimate the amount of a deduction is curtailed in the case of certain classes of expenses.  Sec. 274(d) limits the Court's estimating ability. Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); see Golden v. Commissioner, T.C. Memo. 1993-602.

operations and the expenses that he alleges are associated with this activity.[42] These expenses include, inter alia, telephone and utility bills. The record shows that petitioner, in contradiction to his argument, did deduct expenses associated with this property. For example, petitioner deducted $6,639, $11,699, and $11,392 in connection with the real property as listed on Schedule E for his 1990, 1991, and 1992 returns, respectively. Indeed, petitioner provided no invoices to substantiate any of the expenses he alleges that he paid on Newark T&B's behalf. Furthermore, petitioner failed to offer evidence that these expenses were paid by Newark T&B and not by Alviso or GMT.[43]

### (B) Petitioner's Racing Business

Petitioner also argues that he did not claim as deductions any expenses associated with his racing business. He alleges that he incurred expenses of $17,847.23, $15,065.23, and

---

[42]On brief, petitioner claims he is entitled to unspecified amounts of deductions for depreciation. However, there is insufficient evidence in the record with which we can calculate any depreciation to which petitioner might be entitled.

[43]"The rule is well established that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable." Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). "This is especially true where, as here, the party failing to produce the evidence has the burden of proof or the other party to the proceeding has established a prima facie case." Id.

$30,283.07 for 1990, 1991, and 1992, respectively. In support thereof, petitioner proffers copies of checks from the "Alviso Rock/HK Racing" bank account, copies of bank account statements, and invoices. No one other than petitioner testified about this endeavor or the purported expenses. From the evidence provided, we are unable to determine whether the expenses detailed in the invoices were for the benefit of petitioner's racing business or for one of his related businesses. Nearly all the invoices are made to "Alviso Rock".

(ii). <u>Petitioner Does Not Sustain His Adjustments to Reconstructed Income</u>

We are unable to sustain petitioner's alleged unclaimed expense deductions to the income that respondent reconstructed. Petitioner fails to provide sufficient evidence to support the expense deductions he claims for the years at issue. Petitioner failed to offer the testimony of any of the payees of his checks to support his allegations. The only evidence he has provided are photocopies of checks, some invoices, and his trial testimony. We find petitioner's testimony self-serving, vague, and not persuasive. "It is well settled that we are not required to accept petitioner's self-serving testimony in the absence of corroborating evidence." <u>Jacoby v. Commissioner</u>, T.C. Memo. 1994-612 (citing <u>Lerch v. Commissioner</u>, 877 F.2d 624, 631-632 (7th Cir. 1989), affg. T.C. Memo. 1987-295); see <u>Geiger v. Commissioner</u>, 440 F.2d 688, 689 (9th Cir. 1971), affg. per curiam

T.C. Memo. 1969-159; Niedringhaus v. Commissioner, 99 T.C. 202,
212 (1992); Tokarski v. Commissioner, 87 T.C. at 77 ("Under all
the circumstances, we are not required to accept the self-serving
testimony of petitioner").

Furthermore, we are unable, given the record before us, to
determine which expenses are associated with which business
activity, be it petitioner's corporations or his unincorporated
businesses.  The record unequivocally demonstrates that
petitioner failed to follow and respect business formalities.
Instead, the record evidences the inflows and outflows of
substantial sums of money by and between petitioner and his
related businesses.  The books and records of petitioner's
affiliated corporations and businesses were not offered as
evidence.[44]

3.  Taxable Income and Earnings and Profits

Petitioner argues, for the first time on brief, that
respondent failed to demonstrate that there were sufficient
earnings and profits (E&P) to deem funds that petitioner received
from GMT and Alviso as taxable dividends.[45]  Additionally,

---

[44]For example, the invoices that petitioner submitted in
support of his entitlement to deductions for expenses associated
with his racing business are made to "Alviso".  Without the books
and records of Alviso, it is impossible to determine if these
invoices represent expenses of Alviso, for which deductions have
already been taken.

[45]"This Court generally will not consider issues that are
(continued...)

petitioner alleges that respondent failed to demonstrate that any amounts received from Alviso and GMT exceeded his basis therein.

Generally, gross income includes net accessions to wealth from whatever source derived.  Sec. 61; Han v. Commissioner, T.C. Memo. 2002-148 (citing Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955)).  Section 301, however, places a restriction on the definition of gross income.  Barnard v. Commissioner, T.C. Memo. 2001-242.  Generally, that section provides that funds distributed by a corporation over which the shareholder has dominion and control are taxed under the auspices of section 301(c).  Id.  Pursuant to section 301(c), a constructive dividend[46] is taxed as ordinary income only to the

---

[45](...continued)
raised for the first time on brief, particularly where the belated claim would prejudice a party." Han v. Commissioner, T.C. Memo. 2002-148; Rules 34(b)(4), 41(a) and (b); Foil v. Commissioner, 92 T.C. 376, 418 (1989), affd. 920 F.2d 1196 (5th Cir. 1990); Markwardt v. Commissioner, 64 T.C. 989, 997 (1975); see also Bob Wondries Motors, Inc. v. Commissioner, 268 F.3d 1156 (9th Cir. 2001), affg. Toyota Town, Inc. v. Commissioner, T.C. Memo. 2000-40.  This Court has held on numerous occasions that it will not consider issues not pleaded.  See, e.g., Estate of Mandels v. Commissioner, 64 T.C. 61 (1975); Estate of Horvath v. Commissioner, 59 T.C. 551, 556 (1973); Frentz v. Commissioner, 44 T.C. 485, 491 (1965), affd. 375 F.2d 662 (6th Cir. 1967).

[46]"The crucial concept in a finding that there is a constructive dividend is that the corporation has conferred a benefit on the shareholder in order to distribute available earnings and profits without expectation of repayment." Truesdell v. Commissioner, 89 T.C. 1280, 1295 (1987) (citing Noble v. Commissioner, 368 F.2d 439, 443 (9th Cir. 1966), affg. T.C. Memo. 1965-84).

extent of the distributing corporation's E&P;[47] any excess is nontaxable return of capital to the extent of the taxpayer's basis; and any remaining amount received is taxable as capital gain from the sale or exchange of a capital asset.  Sec. 301(c)(1),(2), and (3); Truesdell v. Commissioner, 89 T.C. 1280, 1295-1298 (1987); Barnard v. Commissioner, supra.

"It is well established that when controlling shareholders divert corporate income to themselves, it is proper to treat such diverted funds as constructive dividends for tax purposes." DiLeo v. Commissioner, 96 T.C. at 883.  As stated more fully above, the Commissioner's deficiency determination is presumptively correct, and the taxpayer bears the burden of showing that determination is erroneous.  See Rule 142(a); Zack v. Commissioner, 692 F.2d 28 (6th Cir. 1982); DiLeo v. Commissioner, supra at 871.  Respondent's deficiency determination included those amounts diverted from Alviso and GMT.  Under these circumstances, petitioner bears the burden of showing that Alviso and GMT did not have sufficient E&P to deem the subject "distributions" to be constructive dividends. DiZenzo v. Commissioner, 348 F.2d 122, 125-127 (2d Cir. 1965) (burden is on taxpayers to establish corporation did not have sufficient E&P), revg. T.C. Memo. 1964-121; Truesdell v.

---

[47]The determination of earnings and profits is governed by sec. 316 and the regulations promulgated thereunder.

Commissioner, supra; Zalewski v. Commissioner, T.C. Memo. 1988-340; Delgado v. Commissioner, T.C. Memo. 1988-66; see Price v. United States, 335 F.2d at 677 ("It is the burden of the taxpayer to demonstrate a non-taxable source for this cash."). Here, petitioner failed to provide any proof that Alviso and GMT did not have sufficient E&P to determine the distributions as taxable, constructive dividends. Likewise, petitioner offered no evidence of his adjusted bases.[48]

Accordingly, we find that petitioner has untimely raised the E&P and basis issues and, otherwise, has failed to meet his burden.[49]

   4.   Respondent's Deficiency Determinations Are Not Erroneous

---

[48]In United States v. Miller, 545 F.2d 1204, 1215 (9th Cir. 1976), the court explained:

> In holding that the constructive distribution should not automatically be applied, it is not herein asserted that diverted funds could never be a return of capital. However, to constitute the latter, there must be some demonstration on the part of the taxpayer and/or the corporation that such distributions were intended to be such a return. To hold otherwise would be to permit the taxpayer to divert such funds and if not caught, to later pay out another return of capital; or if caught, to avoid the conviction by raising the defense that the sums were a return of capital and hence non-taxable.

[49]Additionally, petitioner failed to demonstrate that the distributions from his wholly owned corporations and employers were not additional remuneration for the management services he provided. The record reflects that Alviso and GMT each paid petitioner a salary during the years at issue.

We find that respondent has produced substantial evidence demonstrating that petitioner received unreported income. Delaney v. Commissioner, 743 F.2d 670, 671 (9th Cir. 1984), affg. T.C. Memo. 1982-666; see Bradford v. Commissioner, 796 F.2d 303, 305 (9th Cir. 1986), affg. T.C. Memo. 1984-601. Furthermore, we find that petitioner has failed to establish by a preponderance of the evidence that respondent's determinations were arbitrary or erroneous. Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985), Larsen v. Commissioner, 765 F.2d 939, 941 (9th Cir. 1985); Delaney v. Commissioner, supra at 671. Accordingly, we sustain, subject to the aforesaid[50] and the concessions of the parties, respondent's deficiency determinations for the years herein at issue.

B.  Fraud Penalties

The Commissioner bears the burden of proving by clear and convincing evidence that an "underpayment exists for the years in issue and that some portion of the underpayment is due to fraud." Temple v. Commissioner, T.C. Memo. 2000-337 (citing sec. 7454(a), Rule 142(b); Niedringhaus v. Commissioner, 99 T.C. at 210), affd. 62 Fed. Appx. 605 (6th Cir. 2003); see Baumgardner v. Commissioner, 251 F.2d 311 (9th Cir. 1957), affg. T.C. Memo.

---

[50]As previously stated, the computation under Rule 155 shall evidence that petitioner was owed $7,500 from Newark Wreckers. See supra page 26.

1956-112; <u>Hebrank v. Commissioner</u>, 81 T.C. 640, 642 (1983).
Thus, respondent must establish that petitioner underpaid his
taxes for each year in issue and that some part of the
underpayment for each year is due to fraud.  <u>DiLeo v.
Commissioner</u>, <u>supra</u> at 873.

    1.  <u>Clear and Convincing Evidence of Underpayment</u>

    "To prove an underpayment, the Commissioner is not required
to establish the precise amount of the deficiency determined by
him."  <u>Id.</u>; see <u>Otsuki v. Commissioner</u>, 53 T.C. 96, 105 (1969).
"However, he cannot discharge his burden by simply relying on the
taxpayer's failure to prove error in his determination of the
deficiency."  <u>DiLeo v. Commissioner</u>, <u>supra</u> at 873.  The
Commissioner need only establish that the taxpayer received
unreported income and that the nondisclosure resulted in a tax
deficiency.  <u>United States v. Campbell</u>, 351 F.2d 336, 338 (2d
Cir. 1965); <u>Elwert v. United States</u>, 231 F.2d 928, 931 (9th Cir.
1956); <u>United States v. Bender</u>, 218 F.2d 869, 871-72 (7th Cir.
1955); <u>Langworthy v. Commissioner</u>, T.C. Memo. 1998-218.

    When the allegations of fraud are intertwined with
unreported and indirectly reconstructed income, the Commissioner
can satisfy his burden of proving the underpayment in one of two
ways:  (1) By proving a likely source of the unreported income;
or (2) where the taxpayer alleges a nontaxable source, the
Commissioner may meet his burden by disproving the taxpayer's

alleged nontaxable source. DiLeo v. Commissioner, supra at 873-874. In this case, there is no question of the origin of the unreported income. The parties have also agreed that some deposits were from nontaxable sources. Petitioner admits on brief that he willfully omitted $78,454 and $75,587 of income from his 1991 and 1992 returns. In his written guilty plea in his criminal case, petitioner admitted that he willfully omitted reportable income of $78,454 and $75,587 and that there was additional tax due on this omitted income of $19,299 and $10,377 for 1991 and 1992, respectively. And, as previously explained, there is clear and convincing evidence that he failed to report additional amounts of income for each of the years at issue.

During the 3-year period at issue, more than $1.8 million flowed through his bank accounts. Petitioner does not dispute this, but instead argues that much of this money is nontaxable reimbursements for moneys advanced to and/or expenses incurred for the benefit of his various business activities. When bank deposits make out a prima facie case of underreported income, the taxpayer has the burden of proving additional expenses that he did not claim on his returns. Morse v. Commissioner, T.C. Memo. 2003-332 (citing Siravo v. United States, 377 F.2d 469, 473-474 (1st Cir. 1967); Elwert v. United States, supra at 933). As previously explained, petitioner has failed to do so.

There is also clear and convincing evidence that petitioner failed to report substantial income from the sale of his interest in Tri-City and Newark Wreckers in 1990.

Accordingly, we are convinced that respondent has proven by clear and convincing evidence that petitioner underpaid his income taxes due and owing for the years at issue.

2.  Intent To Defraud

As previously explained, the Commissioner bears the burden of proving fraud by clear and convincing evidence. Sadler v. Commissioner, 113 T.C. 99, 102 (1999); Posnanski v. Commissioner, T.C. Memo. 2001-26; see Henson v. Commissioner, 887 F.2d 1520 (11th Cir. 1989), affg. in part and revg. in part on another ground T.C. Memo. 1986-303; Temple v. Commissioner, supra. "Where fraud is determined for each of several years, respondent's burden applies separately for each of the years." Temple v. Commissioner, supra; see Cefalu v. Commissioner, 276 F.2d 122 (5th Cir. 1960), affg. T.C. Memo. 1958-37; Baumgardner v. Commissioner, supra.

"Fraud is the intentional wrongdoing on the part of a taxpayer to evade a tax believed to be owing." Temple v. Commissioner, supra; see DiLeo v. Commissioner, 96 T.C. at 874; Prof. Serv. v. Commissioner, 79 T.C. 888, 930 (1982). "The required state of mind is one which, 'if translated into action, is well calculated to cheat or deceive the government.'" Zell v.

Commissioner, 763 F.2d 1139, 1143 (10th Cir. 1985), affg. T.C. Memo. 1984-152 (quoting 10 Mertens, Law of Federal Income Taxation, sec. 55.10, at 46 (1984)). A taxpayer's background and the context of the events in question may be considered in determining fraudulent intent. Plunkett v. Commissioner, 465 F.2d 299 (7th Cir. 1972), affg. T.C. Memo. 1970-274; see Temple v. Commissioner, supra (a taxpayer's level of education and his prior history of filing income tax returns are relevant to the inquiry).

Because it is difficult to prove fraudulent intent by direct evidence, fraud can be inferred from various kinds of circumstantial evidence. Courts describe these "badges of fraud" as including the following: (1) Understatement of income;[51] (2) failing to maintain adequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations; (5) concealment of assets; (6) failure to cooperate with tax authorities; (7) the filing of false documents; (8) making of false and inconsistent statements to revenue agents; (9) concealing income from a taxpayer's tax preparer; and (10)

---

[51]"The consistent understatement of large amounts of income for a number of years is evidence of willful intent to evade." Otsuki v. Commissioner, 53 T.C. 96, 108 (1969). In Holland v. United States, 348 U.S. 121, 139 (1954), "the Supreme Court declared that 'evidence of a consistent pattern of underreporting large amounts of income' will support 'an inference of willfulness'". Otsuki v. Commissioner, supra at 108.

extensive dealings in cash.  Bradford v. Commissioner, 796 F.2d at 307; Parks v. Commissioner, 94 T.C. 654, 664 (1990); Temple v. Commissioner, T.C. Memo. 2000-337.  No single factor is necessarily dispositive, but a combination of several factors is persuasive circumstantial evidence of fraud.  Petzoldt v. Commissioner, 92 T.C. at 699.  "A pattern of consistent underreporting of income, particularly when accompanied by other circumstances exhibiting an intent to conceal, justifies the inference of fraud."  Posnanski v. Commissioner, supra; see Holland v. Commissioner, 348 U.S. 121, 137 (1954).

Petitioner consistently underreported large sums of money. See Marcus v. Commissioner, 70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980). Petitioner's failure to substantiate adequately his alleged advances and expenses makes it impossible to verify his allegations.  This Court has found in a similar case that the "inadequacy of petitioners' records, under the circumstances, constitutes a significant indicia of fraud."  Otsuki v. Commissioner, 53 T.C. at 110 (citing Galant v. Commissioner, 26 T.C. 354, 365 (1956)).

Petitioner cannot rely upon events that occurred in his life before, during, and after the relevant periods in issue.  While we are sympathetic with petitioner's personal problems, we cannot condone his failure to report significant sums of income over a

3-year period merely because his mind was not on business.[52]  We find petitioner's defense of personal tragedy misplaced. Petitioner was sufficiently focused and cognizant to, inter alia, open and operate numerous businesses during the relevant period, engage in significant investment activities, engage the assistance of trained accounting professionals, and earn and deposit significant sums of money into his numerous bank accounts.

In support of our finding of fraud, we outline pertinent portions of the record:

(1) Petitioner sold his interest in Tri-City and Newark Wreckers for which he received $200,000 and was relieved of substantial indebtedness.  To this day, petitioner has failed to report this transaction.[53]

---

[52]In Otsuki v. Commissioner, supra at 110, the taxpayer advanced, and we rejected a similar argument.  The taxpayer was too busy and too tired to maintain adequate business records.

[53]Petitioner admits on brief, that he failed to report a net gain from the sale of between $17,247 and $118,247.  This, of course, is after inclusion of $41,105 in additional income for 1990, which accordingly, increased his basis in the Tri-City partnership.  Thus, before respondent's examination and redetermination of Tri-City's 1990 income, it was reasonable for petitioner to assume that he had substantially more net gain (at least $41,105 more) from the sale of Tri-City, which he never reported.

Petitioner seeks solace in a statement that his accountant prepared, which he attached to his 1990 return.  We find this statement, given the specific circumstances of this case, at the
(continued...)

(2) Petitioner diverted substantial amounts of money from his related corporations, Alviso and GMT. To hide the character of these funds petitioner gave a portion of these diverted funds back to his corporations, labeling those funds as loans. To that end, petitioner purposely misled his accountants as to the true nature of these funds. For example, on one of GMT's bank statements for the account into which a $50,000 check was deposited, there is a handwritten notation that the corporation's bookkeeper made which reads "Art [the accountant]- George put this money out of pocket - don't credit as income. We're going to pay our line of credit monthly out of this account, Yvonne."

(3) Petitioner garnered significant funds over a 3-year period from his solely owned, unincorporated business Newark T&B, and he failed to report any income earned therefrom. Petitioner characterized this endeavor on his income tax returns Schedules E as a "lot". Furthermore, petitioner failed to maintain proper books and records for this business.

(4) Petitioner maintained an automobile racing business, which also earned him substantial sums of income. Again,

---

[53](...continued)
very least vague and ill-informing. This statement speaks only to petitioner's inability "TO REPORT HIS SHARE OF THE PARTNERSHIP'S ACTIVITY FOR THE 1990 TAX YEAR." The statement does not communicate that in 1990 petitioner received at least $300,000 of value in exchange for his interest, a transaction which is clearly not a "partnership activity". Furthermore, the statement refers only to Tri-City and not to Newark Wreckers.

petitioner failed to report any of these earnings or maintain adequate books and records for this business.

(5) Petitioner owned and operated for income and investment at least 12 parcels of real property. Although petitioner apparently did report much of the income he received from these properties, he failed to report all the income. When questioned about this failure, petitioner explained: "I just don't really have an explanation." However, petitioner did claim expense deductions for these properties. Again, petitioner failed to maintain adequate books and records for this significant business endeavor.

(6) During the relevant period, petitioner dealt in significant sums of cash or its equivalent for which he has no explanation. For example, during 1990, petitioner wrote four checks made payable to cash for the total sum of $37,834. At trial, petitioner could not recall the purpose for, or use of, these funds. Likewise, petitioner deposited large sums of cash and its equivalent into his bank accounts. We infer significant dealings in cash without a definite explanation as an indicia of fraud. See Parks v. Commissioner, 94 T.C. 654 (1990).

(7) Petitioner failed to inform his accountants (and his bookkeeper) of Newark T&B and his racing business. Both of these businesses earned income for the years at issue, none of which was reported.

(8) Petitioner's admission that he purposely mislabeled checks to his corporation as loans is also evidence of his willingness to defraud. See Solomon v. Commissioner, 732 F.2d 1459 (6th Cir. 1984), affg. T.C. Memo. 1982-603; Afshar v. Commissioner, 692 F.2d 751 (4th Cir. 1982), affg. without published opinion T.C. Memo. 1981-241.

The record before the Court clearly and convincingly demonstrates a pattern of consistent underreporting of income. The record clearly and convincingly shows that petitioner intentionally concealed significant business operations from his accountants and bookkeeper. Petitioner's vague testimony buttresses our finding. There can be little doubt that petitioner's failure to keep adequate records of all earnings and expenses is material evidence of fraud. See Otsuki v. Commissioner, 53 T.C. at 109. "To hold otherwise would, as the Supreme Court stated in United States v. Johnson, 319 U.S. 503, 518 (1943) 'be tantamount to holding that skillful concealment is an invincible barrier to proof.'" Id. at 109. The insufficiency of petitioner's records, under these circumstances, constitutes a significant indicia of fraud. Id. at 110.

3.   Petitioner's Conviction and Collateral Estoppel

We find petitioner's guilty plea of knowingly filing false returns for 1991 and 1992 is additional evidence, which ensures us that the imposition of the fraud penalty in this case is

justified.[54]  In his written guilty plea, petitioner admitted
that he "willfully" made and signed his 1991 and 1992 individual
tax returns that he "did not believe" [were] "true and correct"
[and] "willfully omitted true and correct information concerning"
[his] "income, knowing then that" he "had additional reportable
income" of $78,454 and $75,587 for 1991, and 1992, and that there
was additional tax due and owing on this additional income of
$19,299 and $10,377 for 1991 and 1992, respectively.

Petitioner's conviction for filing false tax returns for
1991 and 1992, although not dispositive of the fraud issue, is a
factor to be considered in determining fraud.  See Wright v.
Commissioner, 84 T.C. 636, 643-44 (1985).  Petitioner admits that
he is estopped to deny that he willfully omitted $78,454 and
$75,587 of income for 1991 and 1992, respectively, but contends
that he is not estopped to deny the fraud penalty for those
years.  Petitioner concedes that his conviction is relevant
evidence on the issue of fraud.

The doctrine of collateral estoppel precludes the
relitigation of any issue or fact that was actually litigated and
necessarily determined by a valid and final judgment.  Peck v.
Commissioner, 90 T.C. 162 (1988), affd. 904 F.2d 525 (9th Cir.
1990); Wright v. Commissioner, supra at 639; Wilson v.

---

[54]On brief, petitioner agrees that his "conviction for 1991
and 1992 may be considered relevant on the issue of fraud."

Commissioner, T.C. Memo. 2002-234.  Of course, this doctrine

"must be confined to situations where the matter raised in the

second suit is identical in all respects with that decided in the

first proceeding and where the controlling facts and applicable

legal rules remain unchanged."  Commissioner v. Sunnen, 333 U.S.

591, 599-600 (1948).  "A prior conviction will estop a party from

contesting in a later civil suit any element necessarily

established in the criminal trial."[55]  Considine v. United

States, 683 F.2d 1285, 1286 (9th Cir. 1982).

As the Court of Appeals for the Ninth Circuit concluded, the

intent to avoid tax under section 7206(1) and the filing of a

false return does not require a fraudulent intent.  Id. at 1287;

see Wright v. Commissioner, supra at 641 (overruling a Tax Court

decision and following the Court of Appeals' holding and

reasoning in Considine).  "Because section 7206(1) does not

require a willful attempt to evade tax, a conviction under

section 7206(1), without more, does not establish fraudulent

intent."[56]  Considine v. United States, supra at 1287.  However,

---

[55]"[T]he question is whether the issue under section 6653(b) is 'identical in all respects' to that decided under section 7206(1)."  Wright v. Commissioner, 84 T.C. 636, 639 (1985).

[56]The Court of Appeals for the Ninth Circuit did determine that the prior conviction did estop the taxpayer from contesting that the return was willfully false and resulted in an underpayment of tax; proof of falsity is a necessary element of sec. 7206(1).  Considine v. United States, 683 F.2d 1285, 1287

(continued...)

"a conviction for willful falsification, under section 7206(1), while not dispositive, <u>will</u> be one of the facts to be considered in a trial on the merits."  <u>Wright v. Commissioner</u>, <u>supra</u> at 643-644 (emphasis added).

Petitioner argues that comments the judge made during his criminal sentencing colloquy are "highly persuasive" to whether he fraudulently evaded the payment of taxes.  We disagree with petitioner's argument that statements the judge made during his criminal sentencing hearing are in some way persuasive on the issue of whether petitioner fraudulently evaded the payment of tax.[57]  See <u>N.Y. v. Julius Nasso Concrete Corp.</u>, 202 F.3d 82 (2d

---

[56](...continued)
(9th Cir. 1982).

[57]Judge Fogel stated:

> But I don't think the conduct looked at in its totality suggests that the reason * * * [petitioner] diverted the money was to avoid paying money to the Internal Revenue Service.  I think that's the finding that the Court would have to make.  So I think we're looking at the lower of the two [sentencing] calculations.
>
> *       *       *       *       *       *       *
>
> The Court has considered the entire 1990, 1991, 1992, but that there is no intent to evade that's established convincingly by the record.  So I would find this is a [sentencing] guideline level 6 which gives the Court an opportunity or gives the Court the discretion, rather, to impose anywhere from zero to six months incarceration.

Cir. 2000); SEC v. Monarch Funding Corp., 192 F.3d 295 (2d Cir. 1999); United States v. Barnette, 10 F.3d 1553 (11th Cir. 1994). We do not know what evidence that court had before it when making those comments. Suffice it to say, the record in this case clearly and convincingly leads us to the conclusion that petitioner intended to fraudulently evade the payment of his taxes for 1990, 1991, and 1992.

Petitioner also argued that assessment is barred by section 6501(a), as the period of limitations for assessing tax had expired. Since we have held that respondent has established by clear and convincing evidence that petitioner underpaid his tax liabilities for 1990, 1991, and 1992 and that such underpayments were due to fraud, the statute of limitations does not bar respondent's assessment and collection activities. See sec. 6501(c)(1); Plunkett v. Commissioner, 465 F.2d 299 (7th Cir. 1972), affg. T.C. Memo. 1970-274; DiLeo v. Commissioner, 96 T.C. at 880.

Decision will be entered

under Rule 155.

**APPENDIX "A"**

| Deposit Date | Deposit Amount | Check Date | Check Number | Check Amount | Payor | Check Memos | Comments | Less Cash |
|---|---|---|---|---|---|---|---|---|
| THE BANK OF MILPITAS  ACCOUNT 512-001-200593  "GEORGE A. MACIEL" | | | | | | | | |
| DEPOSITS - 1990 | | | | | | | | |
| | | | | | | | | |
| 01/03/90 | $6,182.32 | | | $6,182.32 | Unknown | | | |
| 01/11/90 | $9,737.66 | 01/05/90 | 1304 | $349.66 | BAMA Equipment | Parts | Payable: Alviso Rock | |
| | | 01/02/90 | 17156 | $8,400.00 | P.S.B. Trucking Inc. | | | |
| | | 01/03/90 | 816 | $200.00 | Louis W. & Marion E. Bewley | | | |
| | | 01/08/90 | 1616 | $550.00 | Piazza Mobil Sweeping | Yard Rent | | |
| | | 01/03/90 | 61526 | $238.00 | American Business Ins. Brokers | | Payable: Gerald E. Waller | |
| 01/26/90 | $4,674.66 | 01/09/90 | 825 | $200.00 | Louis W. & Marion E. Bewley | | | |
| | | 01/18/90 | 3187 | $1,450.00 | Neil & Betsy Holets | Rent 1-22-90 thru 2-22-90 | | |
| | | 1/22/90 | 839 | $200.00 | Louis W. & Marion E. Bewley | | | |
| | | 01/12/90 | 5624 | $25.00 | Tri City Truck Parts and Equip | Refund Straight line | | |
| | | 01/25/90 | 5583 | $300.00 | Alviso Rock Inc. | | | |
| | | 01/12/90 | 1311 | $349.66 | BAMA Equipment | Parts | Payable to Alviso Rock | |
| | | 01/24/90 | 4096 | $2,150.00 | George Maciel Trucking Inc. | Re: ??? | | |
| 02/14/90 | $5,450.00 | 02/01/90 | 1036 | $250.00 | Daniel Parquette | Feb Rent-Balance of Account | | |
| | | 02/07/90 | 376 | $500.00 | James Morrow | | | |
| | | 02/06/90 | 19288 | $200.00 | Marion Bewley | | Money Order | |
| | | 02/06/90 | 9014592 | $4,500.00 | Taco Bravo | | Cashiers Check | |
| 02/28/90 | $1,000.00 | | | $0.00 | Correction of 2/28/90 Deposit | | | |
| 02/28/90 | $7,248.22 | 02/21/90 | 860 | $600.00 | Louis W. & Marion E. Bewley | | | |
| | | 02/10/90 | 3220 | $1,450.00 | Neil & Betsy Holets | 2/22/90-3/22/90 | | |
| | | 02/16/90 | 309695 | $4,380.14 | State Farm Mutual Auto Ins | | Payable: Alviso Rock Inc. | |
| | | 02/09/90 | 326862 | $1,818.08 | State Farm Mutual Auto Ins | | Payable: Alviso Rock | |
| 03/08/90 | $7,346.21 | 03/03/90 | 1053 | $459.00 | Daniel Parquette | Mar Rent | | |
| | | 03/06/90 | 8122797 | $1,936.02 | California Land Title Co. | Escrow 284613-LM | | |
| | | 03/02/90 | 34428 | $1,150.00 | South Bay Transportation | | | |
| | | 03/01/90 | 10194 | $2,451.53 | Alviso Rock Inc. | | | |
| | | 03/02/90 | 1360 | $349.66 | BAMA Equipment | Parts | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **THE BANK OF MILPITAS  ACCOUNT 512-001-200593  "GEORGE A. MACIEL"** | | | | | | | | |
| **DEPOSITS - 1990** | | | | | | | | |
| | | | | | | | | |
| *Deposit* | *Deposit* | | *Check* | | | | | |
| *Date* | *Amount* | *Check Date* | *Number* | *Check Amount* | *Payor* | *Check Memos* | *Comments* | *Less Cash* |
| | | 03/06/90 | 1366 | $600.00 | BAMA Equipment | March Rent | | |
| | | 03/06/90 | 889 | $400.00 | Louis W. & Marion E. Bewley | | | |
| 03/16/90 | $1,752.00 | | 83508 | $2.00 | Revlon Beauty Care | | | |
| | | 03/11/90 | 900 | $200.00 | Louis W. & Marion E. Bewley | | | |
| | | 03/08/90 | 1678 | $550.00 | Piazza Mobil Sweeping | Rent Yard | | |
| | | 03/14/90 | 1370 | $1,000.00 | BAMA Equipment | | | |
| 04/04/90 | $3,474.10 | 04/03/90 | 1412 | $1,000.00 | BAMA Equipment | | | |
| | | 03/29/90 | 2294 | $2,474.10 | George Maciel Trucking Inc. | | | |
| 04/17/90 | $1,917.87 | 04/05/90 | 429 | $18.25 | James Morrow | Phone Bill | | |
| | | 04/11/90 | 130 | $75.74 | Daniel Estacio | PGE | | |
| | | 04/12/90 | 939 | $200.00 | Louis W. & Marion E. Bewley | | | |
| | | 04/05/90 | 927 | $200.00 | Louis W. & Marion E. Bewley | | | |
| | | 04/09/90 | 1707 | $550.00 | Piazza Mobil Sweeping | Yard Rent | | |
| | | 04/05/90 | 8123340 | $873.88 | California Land Title Co. | Escrow 287641-LM | | |
| 04/30/90 | $7,528.49 | 04/20/90 | 3286 | $1,450.00 | Neil & Betsy Holets | 4/22 thru 5/22 | | |
| | | 04/23/90 | 957 | $400.00 | Louis W. & Marion E. Bewley | | | |
| | | 04/19/90 | 22834 | $109.39 | Saratoga Savings & Loan Assoc | | | |
| | | 04/20/90 | 8123737 | $44.42 | California Land Title Co. | Escrow 284613-LM | | |
| | | 04/09/90 | 418767 | $28.95 | Fireman's Fund | | | |
| | | 03/14/90 | 415163 | $393.00 | Fireman's Fund | | | |
| | | 04/18/90 | 62372 | $154.53 | American Business Ins. Brokers | | | |
| | | 04/26/90 | 10322 | $2,474.10 | Alviso Rock Inc. | | | |
| | | 04/26/90 | 2427 | $2,474.10 | George Maciel Trucking Inc. | | | |
| 06/19/90 | $1,918.45 | 06/16/90 | 490 | $650.00 | James Morrow | Rent | | |
| | | 06/12/90 | 1016 | $200.00 | Louis W. & Marion E. Bewley | | | |
| | | 06/06/90 | 1010 | $200.00 | Louis W. & Marion E. Bewley | | | |
| | | 06/14/90 | 2678 | $386.02 | George Maciel Trucking Inc. | | Payable to Daniel B. Estacio | |
| | | 06/14/90 | 2673 | $182.43 | George Maciel Trucking Inc. | | Payable to Gary Whiteman | |
| | | 06/12/90 | 375 | $300.00 | Analytical Maintenance Service | Rent | | |
| 07/02/90 | $3,175.29 | 06/18/90 | 1026 | $200.00 | Louis W. & Marion E. Bewley | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| THE BANK OF MILPITAS  ACCOUNT 512-001-200593  "GEORGE A. MACIEL" | | | | | | | | |
| DEPOSITS - 1990 | | | | | | | | |
| | | | | | | | | |
| *Deposit* | *Deposit* | | *Check* | | | | | |
| Date | Amount | *Check Date* | Number | *Check Amount* | *Payor* | *Check Memos* | *Comments* | *Less Cash* |
| | | 06/05/90 | 1132 | $500.00 | Daniel Parquette | June Rent | | |
| | | | 11572 | $1.19 | Proctor & Gamble | Refund | | |
| | | 06/28/90 | 1149 | $2,474.10 | Alviso Rock Inc. | | | |
| 07/10/90 | $876.47 | 07/03/90 | 1145 | $326.47 | Daniel Parquette | July Rent AC Repair | | |
| | | 07/06/90 | 1846 | $550.00 | Piazza Mobil Sweeping | Yard Rent | | |
| 07/18/90 | $1,850.00 | 07/06/90 | 1045 | $200.00 | Louis W. & Marion E. Bewley | | | |
| | | 07/16/90 | 528 | $650.00 | James Morrow | Rent | | |
| | | 07/17/90 | 10074 | $1,000.00 | Bill's Trucking Inc. | | Payable: Newark Truck & Body | |
| 08/06/90 | $5,878.36 | 07/26/90 | 2884 | $2,503.80 | George Maciel Trucking Inc. | | | |
| | | 07/31/90 | 1230 | $2,474.56 | Alviso Rock Inc. | | | |
| | | | 248 | $500.00 | Daniel Parquette | Aug Rent | | |
| | | 07/26/90 | 445 | $400.00 | Rex A. Hill | | | |
| 08/15/90 | $5,263.73 | 08/13/90 | 1640 | $600.00 | BAMA Equipment | August Rent | | |
| | | 08/08/90 | 1870 | $550.00 | Piazza Mobil Sweeping | | | |
| | | 08/10/90 | 1071 | $200.00 | Louis W. & Marion E. Bewley | Rent | | |
| | | 08/04/90 | 1063 | $200.00 | Louis W. & Marion E. Bewley | Rent | | |
| | | 08/08/90 | 71088335 | $113.73 | American Express Travel | | Payable: Tri-City Truck Parts | |
| | | 08/13/90 | 6911 | $1,600.00 | Curt Biro Trucking | Sleeper | Payable: Newark Truck & Body | |
| | | 08/06/90 | 4649 | $1,000.00 | Taco Bravo | | | |
| | | 08/13/90 | 1641 | $1,000.00 | BAMA Equipment | | | |
| 08/17/90 | $1,571.77 | 07/31/90 | 63618 | $3,143.54 | American Business Ins. Brokers | | Payable: George Maciel Trucking Inc | |
| | | | | $(1,571.77) | Less Cash | | | $(1,571.77) |
| 08/27/90 | $150.00 | | | $0.00 | Correction of 8/27/90 Deposit | | | |
| 08/27/90 | $2,720.00 | 08/17/90 | 557 | $650.00 | James Morrow | Rent | | |
| | | 08/20/90 | 986 | $1,000.00 | Joyce Lavrar/Terence Perry | Thanks | | |
| | | 08/21/90 | 1135 | $720.00 | J.S.J. Pipeline Co. | Rent 8-20-90 to 10-30-90 | | |
| | | 08/22/90 | 8945 | $500.00 | Richard Moneymaker Lowbed | | Payable: Newark Truck & Body | |
| 09/07/90 | $5,423.00 | 08/30/90 | 3090 | $2,506.50 | George Maciel Trucking Inc. | | | |
| | | 08/30/90 | 1329 | $2,506.50 | Alviso Rock Inc. | | | |
| | | 08/03/90 | 766199 | $10.00 | Fireman's Fund | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **THE BANK OF MILPITAS  ACCOUNT 512-001-200593  "GEORGE A. MACIEL"** | | | | | | | | |
| **DEPOSITS - 1990** | | | | | | | | |
| | | | | | | | | |
| *Deposit* | *Deposit* | | *Check* | | | | | |
| Date | Amount | *Check Date* | Number | *Check Amount* | *Payor* | *Check Memos* | *Comments* | *Less Cash* |
| | | 08/17/90 | 1081 | $200.00 | Louis W. & Marion E. Bewley | Rent | | |
| | | 08/24/90 | 1082 | $200.00 | Louis W. & Marion E. Bewley | Rent | | |
| 09/14/90 | $2,070.74 | 09/05/90 | 1124 | $2,000.00 | Merced Rosales | | | |
| | | 09/13/90 | 1202 | $70.74 | Mission Valley Diesel | | | |
| 09/25/90 | $1,214.32 | 09/14/90 | 1107 | $200.00 | Louis W. & Marion E. Bewley | Rent | | |
| | | 09/16/90 | 186 | $72.00 | Marilyn Michelet | | | |
| | | 09/14/90 | 1676 | $471.16 | BAMA Equipment | | | |
| | | 09/21/90 | 1684 | $471.16 | BAMA Equipment | | | |
| 10/05/90 | $5,013.00 | 09/27/90 | 1390 | $2,506.50 | Alviso Rock Inc. | | | |
| | | 09/27/90 | 3210 | $2,506.50 | George Maciel Trucking Inc. | | | |
| 10/17/90 | $4,795.39 | 10/16/90 | 609 | $650.00 | James Morrow | Rent | | |
| | | 10/13/90 | 1192 | $600.00 | G & S Paving | Hood for Truck | Payable: Newark Truck & Body | |
| | | 10/06/90 | 1228 | $500.00 | Daniel Parquette | Oct Rent | | |
| | | 09/21/90 | 4371 | $900.07 | L.R. Sellars Jr. Insurance | RP End | Payable: Plymouth Inc. | |
| | | 10/04/90 | 4000 | $653.00 | Daniel Hernandez Jr. | | | |
| | | 10/05/90 | 1724 | $471.16 | BAMA Equipment | | Payable: Alviso Rock | |
| | | 10/12/90 | 1730 | $471.16 | BAMA Equipment | | Payable: Alviso Rock | |
| | | 10/08/90 | 1911 | $550.00 | Piazza Mobil Sweeping | | | |
| 10/31/90 | $942.32 | 10/26/90 | 1746 | $942.32 | BAMA Equipment | | Payable to Alviso Rock | |
| 12/13/90 | $3,203.00 | 11/30/90 | 4075 | $653.00 | Daniel Hernandez Jr. | | | |
| | | 12/07/90 | 1942 | $550.00 | Piazza Mobil Sweeping | | | |
| | | 12/06/90 | 12853 | $2,000.00 | P&C Auto Wreckers Inc. | 90 Toyota P/U 4x4 | | |
| 12/19/90 | $2,270.00 | 12/17/90 | 1784 | $600.00 | BAMA Equipment | | | |
| | | 12/07/90 | 1187 | $400.00 | Louis W. & Marion E. Bewley | Rent | | |
| | | 12/16/90 | 654 | $670.00 | James Morrow | Phone | | |
| | | 12/14/90 | 1188 | $600.00 | Louis W. & Marion E. Bewley | Rent | | |
| 12/31/90 | $693.02 | | | $693.02 | Interest for Year | | | |
| **TOTAL** | **$105,340.39** | | | **$105,340.39** | | | | **$(1,571.77)** |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| THE BANK OF MILPITAS ACCOUNT 512-001-200593 "GEORGE A. MACIEL" | | | | | | | | |
| DEPOSITS - 1991 | | | | | | | | |
| | | | | | | | | |
| _Deposit Date_ | _Deposit Amount_ | _Check Date_ | _Check Number_ | _Check Amount_ | _Payor_ | _Check Memos_ | _Comments_ | _Less Cash_ |
| 01/03/91 | $5,013.00 | 12/27/90 | 1710 | $2,506.50 | Alviso Rock, Inc. | | | |
| | | 12/27/90 | 3757 | $2,506.50 | George Maciel Trucking Inc. | | | |
| 02/06/91 | $5,552.12 | 01/11/91 | 1225 | $200.00 | Louis Bewley | Jan 92 | | |
| | | 01/31/91 | 1236 | $200.00 | Louis Bewley | Jan ?? | | |
| | | 01/18/91 | 1226 | $200.00 | Louis Bewley | Jan ?? | | |
| | | 01/25/91 | 3901 | $2,476.06 | George Maciel Trucking Inc. | | | |
| | | 01/24/91 | 1776 | $2,476.06 | Alviso Rock, Inc. | | | |
| 02/20/91 | $1,937.53 | 02/19/92 | 699 | $650.00 | James Morrow | Rent | | |
| | | 02/15/91 | 251175006 | $634.53 | Leslie Salt | | Payable: Newark Truck & Body | |
| | | 02/06/91 | 4130 | $653.00 | Daniel Hernandez, Jr. | | | |
| 02/21/91 | $5,502.43 | 02/06/91 | 4484 | $4,777.43 | Hawaiian Insurance | M.A.C. Contracting Inc. | Payable: Newark Truck & Body | |
| | | 02/19/91 | 4499 | $725.00 | Hawaiian Insurance | M.A.C. Contracting Inc. | Payable: Newark Truck & Body | |
| 03/13/91 | $2,203.00 | 03/08/91 | 1264 | $400.00 | Louis Bewley | Feb 2&3 | | |
| | | 03/07/91 | 9747 | $500.00 | Richard Moneymaker Lowbed | | Payable: Newark Truck & Body | |
| | | 03/02/91 | 613 | $100.00 | Larry Kauffman | | | |
| | | 03/11/91 | 1982 | $550.00 | Piazza Mobil Sweeping | | | |
| | | 03/11/91 | 4136 | $653.00 | Daniel Hernandez, Jr. | | | |
| 03/28/91 | $3,924.95 | 03/12/91 | 18455 | $174.95 | Tax Collector, Alameda County | 9213124 | | |
| | | 03/08/91 | 6571 | $2,350.00 | M.A.C. Contracting Inc | | Payable: Newark Truck & Body | |
| | | 03/24/91 | 1275 | $400.00 | Louis Bewley | #1 & #4 | | |
| | | | | $1,000.00 | Unknown | | Math Error? 3/28 DM of $1,000 | |
| 04/04/91 | $4,952.12 | 03/28/91 | 1954 | $2,476.06 | Alviso Rock, Inc. | | | |
| | | 03/28/91 | 4153 | $2,476.06 | George Maciel Trucking Inc. | | | |
| 04/10/91 | $2,350.00 | 04/09/91 | 1884 | $1,800.00 | BAMA Equipment | Rent Jan Feb Mar 1991 | | |
| | | 04/09/91 | 1992 | $550.00 | Piazza Mobil Sweeping | Rent | | |
| 04/26/91 | $2,753.00 | 04/10/91 | 4160 | $653.00 | Daniel Hernandez, Jr. | | | |
| | | 04/15/91 | 732 | $650.00 | James Morrow | Rent | | |
| | | 04/05/91 | 306 | $200.00 | Merced Rosales | | | |
| | | 04/18/91 | 123 | $850.00 | Lovett Excavating and Paving | Pete Hood | | |
| | | 04/12/91 | 1294 | $200.00 | Louis Bewley | | | |
| | | 04/05/91 | 1289 | $200.00 | Louis Bewley | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **THE BANK OF MILPITAS  ACCOUNT 512-001-200593  "GEORGE A. MACIEL"** | | | | | | | | |
| **DEPOSITS - 1991** | | | | | | | | |
| *Deposit Date* | *Deposit Amount* | *Check Date* | *Check Number* | *Check Amount* | *Payor* | *Check Memos* | *Comments* | *Less Cash* |
| 05/06/91 | $4,773.77 | 04/27/91 | 1306 | $200.00 | Louis Bewley | Rent | | |
| | | 04/19/91 | 3921 | $3,203.77 | Winston Hill Assurance Co Ltd | | | |
| | | 04/19/91 | 3922 | $1,370.00 | Winston Hill Assurance Co Ltd | | | |
| 05/09/91 | $2,271.96 | 05/06/91 | 26698 | $221.96 | LMC Metals | | Payable: Valley Recycling | |
| | | 05/06/91 | 94 | $550.00 | Piazza Mobil Sweeping | | | |
| | | 05/01/91 | 1338 | $1,500.00 | Daniel Parquette | | | |
| 05/21/91 | $2,047.95 | 05/16/91 | 751 | $650.00 | James Morrow | Rent | | |
| | | 05/20/91 | 1356 | $975.00 | J.S.J. Pipeline Co. | Rent May June July | | |
| | | 05/18/91 | 1316 | $300.00 | Louis Bewley | | | |
| | | 05/15/91 | 33460 | $122.95 | Stewart Title of California | | | |
| 06/04/91 | $9,394.92 | 05/23/91 | 1933 | $2,000.00 | BAMA Equipment | April May June Rent | | |
| | | 06/04/91 | 2036 | $550.00 | Piazza Mobil Sweeping | | | |
| | | | 532 | $700.00 | Ricky and Anna Flores | June Rent | | |
| | | 05/27/91 | 1322 | $200.00 | Louis Bewley | | | |
| | | 05/31/91 | 161 | $1,000.00 | HG Trucking | Advance Pmt | | |
| | | 05/30/91 | 2101 | $2,472.46 | Alviso Rock, Inc. | | | |
| | | 05/30/91 | 1477 | $2,472.46 | George Maciel Trucking Inc. | | | |
| 06/13/91 | $1,860.50 | 06/07/91 | 1333 | $200.00 | Louis Bewley | | | |
| | | 06/10/91 | 4202 | $653.00 | Daniel & Cecelia Hernandez Jr. | | | |
| | | 06/10/91 | 10203 | $1,007.50 | Richard Moneymaker Lowbed | | Payable: Newark Truck & Body | |
| 07/09/91 | $1,353.00 | 07/05/91 | 556 | $700.00 | Ricky and Anna Flores | | | |
| | | 07/01/91 | 4207 | $653.00 | Daniel & Cecelia Hernandez Jr. | | | |
| 08/05/91 | $1,497.00 | | | $1,000.00 | Unknown | | Returned ck  8/9 DM $1,000 | |
| | | | | $497.00 | Unknown | | | |
| 08/13/91 | $1,000.00 | 08/03/91 | 568 | $700.00 | Ricky and Anna Flores | Rent | | |
| | | 08/02/91 | 1357 | $300.00 | Louis Bewley | Rent | | |
| 08/21/91 | $1,000.00 | | | $1,000.00 | Unknown | | | |
| 09/09/91 | $6,443.92 | 08/29/91 | 3030 | $2,472.46 | Alviso Rock, Inc. | | | |
| | | 08/29/91 | 3121 | $2,472.46 | George Maciel Trucking Inc. | | | |
| | | 08/30/91 | 20912534 | $1,499.00 | State of California | Tax Refund | | |
| 09/11/91 | $14,018.44 | 09/05/91 | 8054 | $4,000.00 | M.A.C. Contracting Inc | | Payable: Newark Truck & Body | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| THE BANK OF MILPITAS  ACCOUNT 512-001-200593  "GEORGE A. MACIEL" | | | | | | | | |
| DEPOSITS - 1991 | | | | | | | | |
| | | | | | | | | |
| *Deposit Date* | *Deposit Amount* | *Check Date* | *Check Number* | *Check Amount* | *Payor* | *Check Memos* | *Comments* | *Less Cash* |
| | | 09/09/91 | 2557 | $8,000.00 | S & P Truck & Trailer Repair | | Payable: Newark Truck & Body | |
| | | 09/09/91 | 2105 | $550.00 | Piazza Mobil Sweeping | Yard Rent | | |
| | | 09/07/91 | 1881 | $500.00 | C.K. Transport | 1/2 Payment Pete Hood | | |
| | | 09/04/91 | 960334 | $268.44 | County of Alameda | | | |
| | | 09/07/91 | 593 | $700.00 | Ricky or Ana M. Flores | Rent | | |
| 09/24/91 | $5,500.00 | 09/13/91 | 3431 | $5,500.00 | Michel K. Pipes Martha J. Baroo | Cummins ??? Engine | | |
| 10/08/91 | $1,000.00 | 09/23/91 | 1416 | $1,000.00 | Daniel Parquette | Aug & Sept Rent | "Insuff Funds" - debit memo in acct 0466 | |
| 10/08/91 | $4,951.25 | 09/26/91 | 4983 | $2,472.46 | George Maciel Trucking Inc. | | | |
| | | 09/26/91 | 2307 | $2,478.79 | Alviso Rock, Inc. | | | |
| 11/06/91 | $6,526.92 | | 5207 | $2,508.46 | George Maciel Trucking Inc. | | | |
| | | | 3296 | $2,508.46 | Alviso Rock, Inc. | | | |
| | | 10/18/91 | 864 | $650.00 | James Morrow | Rent | | |
| | | 10/18/91 | 1401 | $200.00 | Louis Bewley | Rent | | |
| | | 10/25/91 | 1403 | $200.00 | Louis Bewley | Rent | | |
| | | 10/11/91 | 1396 | $200.00 | Louis Bewley | Rent | | |
| | | 11/02/91 | 177 | $260.00 | G & G Express | Gears | | |
| 11/22/91 | $2,797.43 | 11/16/91 | 5396 | $442.43 | George Maciel Trucking Inc. | | | |
| | | | 1632 | $180.00 | Mission Valley Diesel | | | |
| | | | 168907 | $150.00 | Electric & Gas Industries Asso | Refrigerator Rebate | | |
| | | 11/01/91 | 3470 | $500.00 | P.J. Vierra | Rent on Boscell | | |
| | | | 1596 | $975.00 | J.S.J. Pipeline Co. | Office Rent Oct, Nov, Dec | | |
| | | 11/08/91 | 2174 | $550.00 | Piazza Mobil Sweeping | Rent | | |
| 12/03/91 | $5,615.12 | | | $5,615.12 | Unknown | | | |
| 12/31/91 | $755.42 | 12/31/91 | | $755.42 | Interest for the Year | | | |
| TOTAL | $106,995.75 | | | $106,995.75 | | | | $0.00 |
| | | | | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **THE BANK OF MILPITAS  ACCOUNT 512-001-200593  "GEORGE A. MACIEL"** | | | | | | | | |
| **DEPOSITS - 1992** | | | | | | | | |
| | | | | | | | | |
| *Deposit Date* | *Deposit Amount* | *Check Date* | *Check Number* | *Check Amount* | *Payor* | *Check Memos* | *Comments* | *Less Cash* |
| 01/06/92 | $512.35 | 01/03/92 | 6651 | $112.35 | Alviso Rock, Inc. | | Payable: Roger Balmeda | |
| | | 12/23/91 | 1438 | $200.00 | Louis Bewley | Rent | | |
| | | 12/13/91 | 1429 | $200.00 | Louis Bewley | Rent | | |
| 02/06/92 | $7,155.92 | 02/01/92 | 1467 | $1,200.00 | Louis Bewley | Rent | | |
| | | 01/31/92 | 5617 | $2,508.46 | George Maciel Trucking, Inc. | | | |
| | | 01/31/92 | 2530 | $2,472.46 | Alviso Rock, Inc. | | | |
| | | 02/05/92 | 1710 | $975.00 | J.S.J. Pipeline Co. | Office Rent Jan Feb Mar '92 | | |
| 02/12/92 | $2,953.00 | 02/05/92 | 2151 | $1,500.00 | BAMA Equipment | Annual | | |
| | | 02/10/92 | 4359 | $653.00 | Daniel Hernandez Jr. | | | |
| | | 02/06/92 | 1979 | $250.00 | Charles A. Lamb & Rose C. Lamb | | | |
| | | 02/10/92 | 2268 | $550.00 | Piazza Mobil Sweeping | Yard Rent | | |
| 02/26/92 | $3,244.89 | 02/25/92 | 216 | $500.00 | Collette Krull | | | |
| | | 02/13/92 | 6943 | $349.84 | Robertson Trucking Service, Inc | for Bett's Springs | | |
| | | | 949 | $650.00 | James Morrow | Rent | | |
| | | 02/18/92 | 371 | $450.00 | San Jose Equipment Sales | | Payable: Newark Truck & Body | |
| | | 02/08/92 | 1473 | $200.00 | Louis Bewley | | | |
| | | 02/15/92 | 1482 | $200.00 | Louis Bewley | Rent | | |
| | | 02/21/92 | 6954 | $395.05 | Robertson Trucking Service, Inc | | | |
| | | 02/01/92 | 3530 | $500.00 | P.J. Vierra | Rent on Boscell Rd | | |
| 03/04/92 | $6,241.17 | 02/28/92 | 5727 | $2,472.46 | George Maciel Trucking, Inc. | | | |
| | | 02/28/92 | 2589 | $2,472.46 | Alviso Rock, Inc. | | | |
| | | 02/27/92 | 95687 | $1,296.25 | North Carolina Occidental Fire | All Claims | Payable: Joe Gonzales Jr. | |
| 03/13/92 | $4,516.00 | 03/06/92 | 1500 | $200.00 | Louis Bewley | Rent | | |
| | | 03/05/92 | 21350 | $168.00 | Von Euw & L.J. Nunes Trucking | | Payable: Newark Truck & Body | |
| | | 03/11/92 | 1033 | $200.00 | Steven M. Taylor | Rent | | |
| | | 03/05/92 | 2290 | $550.00 | Piazza Mobil Sweeping | Yard Rent | | |
| | | 03/09/92 | 3618 | $300.00 | Michel K. Pipes | | | |
| | | 03/11/92 | 6695 | $3,098.00 | Alviso Rock, Inc. | DMV | | |

THE BANK OF MILPITAS  ACCOUNT 512-001-200593  "GEORGE A. MACIEL"

DEPOSITS - 1992

| Deposit Date | Deposit Amount | Check Date | Check Number | Check Amount | Payor | Check Memos | Comments | Less Cash |
|---|---|---|---|---|---|---|---|---|
| 03/25/92 | $4,250.00 | 03/16/92 | 1018 | $150.00 | Pacific Water Truck & Equipment | Truck Steps | | |
| | | 03/20/92 | 1512 | $200.00 | Louis Bewley | Rent | | |
| | | 03/13/92 | 9447 | $3,250.00 | MAC Contracting Inc. | | Payable: Newark Truck & Body | |
| | | 03/15/92 | 963 | $650.00 | James Morrow | Rent | | |
| 04/01/92 | $5,614.36 | 03/26/92 | 3634 | $300.00 | Michel K. Pipes | Rent Paid in full | | |
| | | 03/11/92 | 61741206 | $369.44 | AT&T | Residence Service Refund | | |
| | | 03/27/92 | 2649 | $2,472.46 | Alviso Rock, Inc. | | | |
| | | 03/27/92 | 5859 | $2,472.46 | George Maciel Trucking, Inc. | | | |
| 04/07/92 | $1,850.00 | 03/28/92 | 1514 | $200.00 | Louis Bewley | Rent | | |
| | | 03/29/92 | 714 | $400.00 | Ricky or Ana Flores | | | |
| | | 04/03/92 | 2022 | $250.00 | Charles Lamb | Rent | | |
| | | 04/03/92 | 1979 | $1,000.00 | Stockton Semi Trailer Inc. | | | |
| 04/16/92 | $5,832.69 | 04/08/92 | 52280 | $2,850.00 | F.B. Hart Co. Inc. | | Payable: Newark Truck & Body | |
| | | 04/07/92 | 32060115 | $1,484.26 | The Travelers | Complete & final Settlement | Payable: George Maciel Trucking Inc | |
| | | 04/10/92 | 4395 | $653.00 | Daniel Hernandez Jr. | | | |
| | | 04/05/92 | 2308 | $550.00 | Piazza Mobil Sweeping | Yard Rent | | |
| | | 04/07/92 | 32060106 | $295.43 | The Travelers | Settlement of Property Damage | Payable: George Maciel Trucking Inc | |
| | | 04/13/92 | 726 | $200.00 | Ricky or Ana Flores | | | |
| | | 03/10/92 | 1522 | $200.00 | Louis Bewley | Rent | | |
| | | 04/12/92 | 611 | $100.00 | Dad's Enterprises | | | |
| | | 04/16/92 | 5730 | $(500.00) | Cashier's Ck to Ann Miller | | | $(500.00) |
| 04/21/92 | $4,000.00 | 04/21/92 | CM | $4,000.00 | Dad's Enterprises | Transfer | | |
| 05/07/92 | $5,754.42 | 05/01/92 | 6036 | $2,481.96 | George Maciel Trucking, Inc. | | | |
| | | 05/01/92 | 2723 | $2,472.46 | Alviso Rock, Inc. | | | |
| | | 04/28/92 | 738 | $400.00 | Ricky or Ana Flores | | | |
| | | 05/01/92 | 1535 | $200.00 | Louis Bewley | Rent | | |
| | | 04/24/92 | 1530 | $200.00 | Louis Bewley | Rent | | |
| 05/15/92 | $2,378.00 | 05/13/92 | 1847 | $975.00 | J.S.J. Pipeline Co. | Office Rent | | |
| | | 05/10/92 | 743 | $200.00 | Ricky or Ana Flores | Rent | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| THE BANK OF MILPITAS ACCOUNT 512-001-200593 "GEORGE A. MACIEL" | | | | | | | | |
| DEPOSITS - 1992 | | | | | | | | |
| | | | | | | | | |
| Deposit Date | Deposit Amount | Check Date | Check Number | Check Amount | Payor | Check Memos | Comments | Less Cash |
| | | 05/10/92 | 4417 | $653.00 | Daniel Hernandez Jr. | | | |
| | | 05/12/92 | 2319 | $550.00 | Piazza Mobil Sweeping | Yard Rent | | |
| 06/04/92 | $5,954.42 | 05/29/92 | 2782 | $2,472.46 | Alviso Rock, Inc. | | | |
| | | 05/29/92 | 6210 | $2,481.96 | George Maciel Trucking, Inc. | | | |
| | | 06/01/92 | 95756 | $1,000.00 | Mike Flores | Cashier's Check | Payable: Ricardo Flores | |
| 07/06/92 | $7,949.48 | 06/15/92 | 1033 | $600.00 | James Morrow | May Rent | | |
| | | 06/12/92 | 1568 | $200.00 | Louis Bewley | Rent | | |
| | | 06/05/92 | 1567 | $200.00 | Louis Bewley | Rent | | |
| | | 07/03/92 | 1580 | $200.00 | Louis Bewley | Rent | | |
| | | 06/26/92 | 1577 | $200.00 | Louis Bewley | Rent | | |
| | | 06/11/92 | 2340 | $550.00 | Piazza Mobil Sweeping | Yard Rent | | |
| | | 06/26/92 | 6415 | $2,481.96 | George Maciel Trucking, Inc. | | | |
| | | 06/23/92 | 60250008305 | $1,045.06 | Farmers Insurance Group | | Payble: Alviso Rock | |
| | | 06/26/92 | 2849 | $2,472.46 | Alviso Rock, Inc. | | | |
| 08/04/92 | $3,181.96 | 07/31/92 | 6662 | $2,481.96 | George Maciel Trucking, Inc. | | | |
| | | 07/27/92 | | $300.00 | Dad's Enterprises | Rent on Yard | | |
| | | 07/10/92 | 1587 | $200.00 | Louis Bewley | Rent | | |
| | | 07/17/92 | 1588 | $200.00 | Louis Bewley | Rent | | |
| 10/09/92 | $8,710.79 | 10/02/92 | 3077 | $2,478.79 | Alviso Rock, Inc. | | | |
| | | 09/24/92 | 22750409 | $5,032.00 | State of California | Tax Refund | | |
| | | 10/01/92 | 838 | $700.00 | Ana Flores | Oct 92 Rent | | |
| | | 09/25/92 | 1639 | $200.00 | Louis Bewley | Rent | | |
| | | 10/01/92 | 839 | $100.00 | Ana Flores | Back Rent $40 Balance | | |
| | | 10/02/92 | 1641 | $200.00 | Louis Bewley | Rent | | |
| 10/21/92 | $4,638.29 | 10/07/92 | 7116 | $2,488.29 | George Maciel Trucking, Inc. | | | |
| | | 10/15/92 | 56812 | $1,000.00 | Bank of Agriculture Cashier's Ck | Rent Oct & Nov | | |
| | | 10/11/92 | 3579 | $500.00 | Linda Ventura | Sept Rent | | |
| | | 10/15/92 | 1093 | $650.00 | James Morrow | Rent | | |
| 11/10/92 | $1,525.00 | 11/04/92 | 2499 | $550.00 | Piazza Mobil Sweeping | Yard Rent | | |
| | | 11/06/92 | 2064 | $975.00 | J.S.J. Pipeline Co. | Office Rent | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **THE BANK OF MILPITAS  ACCOUNT 512-001-200593  "GEORGE A. MACIEL"** | | | | | | | | |
| **DEPOSITS - 1992** | | | | | | | | |
| | | | | | | | | |
| *Deposit Date* | *Deposit Amount* | *Check Date* | *Check Number* | *Check Amount* | *Payor* | *Check Memos* | *Comments* | *Less Cash* |
| 12/07/92 | $7,670.42 | 11/20/92 | 1824 | $344.00 | Carlton Trucking | MC-2 Repair | Payable: Newark Truck & Body | |
| | | | 3208 | $2,508.46 | Alviso Rock, Inc. | | | |
| | | 12/02/92 | 2521 | $550.00 | Piazza Mobil Sweeping | Rent Dec | | |
| | | 11/30/92 | 551 | $650.00 | Margaret or Kelvin Deemer | Rent | | |
| | | 12/03/92 | 9484 | $2,517.96 | George Maciel Trucking, Inc. | | | |
| | | 11/20/92 | 1676 | $200.00 | Louis Bewley | Rent | | |
| | | 11/13/92 | 1675 | $200.00 | Louis Bewley | Rent | | |
| | | 12/05/92 | 879 | $700.00 | Ana Flores | | Bounced - 12/15/92 DM | |
| 12/31/92 | $339.64 | 12/31/92 | | $339.64 | Interest for Year | | | |
| **TOTAL** | **$94,272.80** | | | **$94,272.80** | | | | **$(500.00)** |
| | | | | | | | | |
| | | | | | | | | |

**APPENDIX "B"**

| Deposit Date | Deposit Amount | Check Date | Check Number | Check Amount | Payor | Check Memos | Comments | Less Cash |
|---|---|---|---|---|---|---|---|---|
| THE BANK OF MILPITAS  ACCOUNT 512-001-300466  "GEORGE A. MACIEL" | | | | | | | | |
| DEPOSITS - 1990 | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| 01/03/90 | $22,271.15 | 01/02/90 | | $490.00 | James Morrow | Rent & Elect | | |
| | | 12/22/89 | 5551 | $1,024.15 | Alviso Rock Inc | | | |
| | | 12/27/89 | 3895 | $1,000.00 | George Maciel Trucking | Reimburse for DMV Fees | | |
| | | 12/29/89 | 1298 | $10,000.00 | BAMA Equipment | Shareholder Draw | | |
| | | 12/27/89 | 247 | $9,757.00 | Atherton & Stevens Trust Acct | Arbitration Award | | |
| 01/26/90 | $4,903.06 | 01/25/90 | 1983 | $2,451.53 | George Maciel Trucking | | | |
| | | 01/25/90 | 10127 | $2,451.53 | Alviso Rock Inc | | | |
| 01/26/90 | $7,500.00 | 01/19/90 | 35286 | $7,500.00 | Sutter Insurance Company | Collision Loss '71 Freuhauf | Payable: Alviso Rock Inc. | |
| 02/14/90 | $22,004.93 | 02/09/90 | 12142 | $15,000.00 | Taylor Leasing Inc. | Gonzalez | Payable: Alviso Rock | |
| | | 02/09/90 | 1332 | $600.00 | BAMA Equipment | February Rent | | |
| | | 08/25/89 | 3259 | $4,447.40 | George Maciel Trucking | | Payable: Fred Isit | |
| | | 02/07/90 | 1667 | $550.00 | Piazza Mobil Sweeping | Rent Yard | | |
| | | | 2011 | $147.09 | George Maciel Trucking | | Payable: H. Gonzales | |
| | | 01/26/90 | 1321 | $349.66 | BAMA Equipment | Parts | Payable: Alviso Rock | |
| | | 02/02/90 | 1328 | $349.66 | BAMA Equipment | Parts | Payable: Alviso Rock | |
| | | 02/09/90 | 1331 | $349.66 | BAMA Equipment | Parts | Payable: Alviso Rock | |
| | | | 2040 | $211.46 | George Maciel Trucking | | Payable: Gonzales | |
| 02/28/90 | $6,711.13 | 02/23/90 | 1355 | $349.66 | BAMA Equipment | Parts | Payable: Alviso Rock | |
| | | 02/25/90 | 2113 | $2,451.53 | George Maciel Trucking | | | |
| | | 02/19/90 | 400270136 | $3,909.94 | Progressive Companies | Property Damage and Down Time | Payable: Alviso Rock | |
| 03/19/90 | $6,500.00 | 03/17/90 | 426 | $13,000.00 | Daniel Hernandez | | Payable: George Maciel Trucking Inc | |
| | | | | $(6,500.00) | 1/2 deposited to acct 001-300431 "George P. Maciel" | | | ($6,500.00) |
| 03/20/90 | $100,000.00 | 03/20/90 | CM | $100,000.00 | Time Certificate of Deposit | | | |
| 05/09/90 | $5,473.98 | 04/27/90 | 965 | $200.00 | Louis Bewley | | | |
| | | 04/30/90 | 1057 | $250.00 | Charles A. Lamb | | | |
| | | 05/05/90 | 151 | $450.00 | Daniel Estacio | Home Rent | | |
| | | 04/27/90 | 1449 | $357.66 | BAMA Equipment | | Payable to Alviso Rock | |

**THE BANK OF MILPITAS  ACCOUNT 512-001-300466  "GEORGE A. MACIEL"**

**DEPOSITS - 1990**

| Deposit Date | Deposit Amount | Check Date | Check Number | Check Amount | Payor | Check Memos | Comments | Less Cash |
|---|---|---|---|---|---|---|---|---|
| | | 04/24/90 | 46568 | $2,616.32 | Grade-Way Construction | | Payable to Alviso Rock | |
| | | 05/03/90 | 1461 | $1,000.00 | BAMA Equipment | | | |
| | | 05/03/90 | 1460 | $600.00 | BAMA Equipment | Rent | | |
| 05/24/90 | $6,317.00 | 05/18/90 | 3145 | $14,017.00 | US Treasury | | | |
| | | | | $(7,700.00) | Cash Back | | | $(7,700.00) |
| 06/11/90 | $73,495.18 | 05/16/90 | 249 | $47,495.18 | Cashier's Ck | | | |
| | | 04/27/90 | 179 | $25,000.00 | Cashier's Ck | | | |
| | | 06/01/90 | 4573 | $1,000.00 | Taco Bravo | | | |
| 06/19/90 | $15,000.00 | 06/19/90 | | $15,000.00 | Travelers Checks | | 30 x $500 | |
| 07/02/90 | $20,426.17 | 06/23/90 | 1392 | $1,952.07 | Fleming Transport | | Payable: Newark Truck & Body | |
| | | 06/28/90 | 2739 | $2,474.10 | George Maciel Trucking | | | |
| | | 06/26/90 | 1569 | $15,000.00 | BAMA Equipment | | Payable: George Maciel Trucking | |
| | | 06/22/90 | 4601 | $1,000.00 | Taco Bravo | | | |
| 07/10/90 | $4,050.00 | 05/07/90 | 1027 | $650.00 | Steve Giarusso Trucking | Rent | | |
| | | 07/05/90 | 2516 | $800.00 | Roy's Truck Painting | 76 Ford Hood | | |
| | | 07/03/90 | 1585 | $1,000.00 | BAMA Equipment | | | |
| | | 07/03/90 | 1584 | $600.00 | BAMA Equipment | July Rent | | |
| | | 07/02/90 | 426 | $800.00 | Rex A. Hill | 1/2/ pymnt on … | | |
| | | 06/29/90 | 1040 | $200.00 | Louis Bewley | | | |
| 07/18/90 | $9,600.00 | 07/18/90 | | $9,600.00 | Currency | | | |
| 07/24/90 | $9,700.00 | 07/24/90 | | $9,700.00 | Currency | | | |
| 07/26/90 | $9,800.00 | 07/26/90 | | $9,800.00 | Currency | | | |
| 09/07/90 | $7,500.00 | 09/06/90 | 2082 | $7,500.00 | Cashier's Ck | | Bank of Milpitas | |
| 09/14/90 | $5,502.51 | 09/05/90 | 3981 | $652.51 | Daniel Hernandez | Sept | | |
| | | 09/11/90 | 1888 | $550.00 | Piazza Mobil Sweeping | | | |
| | | 09/08/90 | 1207 | $500.00 | Daniel Parquette | Sept. Rent | | |
| | | 09/01/90 | 1098 | $200.00 | Louis Bewley | Rent | | |
| | | 09/11/90 | 1673 | $600.00 | BAMA Equipment | Sept Rent | | |
| | | | 12249 | $3,000.00 | Sandman, Inc  Star Concrete | Invoice #102 | Payable: Newark Truck & Body | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **THE BANK OF MILPITAS ACCOUNT 512-001-300466 "GEORGE A. MACIEL"** | | | | | | | | |
| **DEPOSITS - 1990** | | | | | | | | |
| | | | | | | | | |
| *Deposit Date* | *Deposit Amount* | *Check Date* | *Check Number* | *Check Amount* | *Payor* | *Check Memos* | *Comments* | *Less Cash* |
| 09/25/90 | $4,502.00 | 09/11/90 | 64208 | $4,502.00 | American Business Ins Brokers | | Payable: George Maciel Trucking Inc | |
| 10/05/90 | $6,261.70 | 10/04/90 | 1722 | $600.00 | BAMA Equipment | Oct Rent | | |
| | | 09/28/90 | 1122 | $200.00 | Louis Bewley | Rent | | |
| | | 09/21/90 | 1121 | $200.00 | Louis Bewley | Rent | | |
| | | 10/05/90 | 1504 | $1,000.00 | Hillview Engineering Corp | Advertising | | |
| | | 09/24/90 | 9050 | $500.00 | Richard Moneymaker Lowbed | | Payable to Newark Body Shop | |
| | | 09/28/90 | 1710 | $471.16 | BAMA Equipment | | | |
| | | 08/25/89 | 4085 | $2,290.54 | George Maciel Trucking | | Payable to Fred Isit | |
| | | 09/02/90 | 4694 | $1,000.00 | Taco Bravo | | | |
| 10/12/90 | $40,000.00 | 10/12/90 | CM | $40,000.00 | Unknown | | | |
| 10/23/90 | $1,600.00 | 10/23/90 | | $1,200.00 | Unknown | | ABA 11-35 | |
| | | | | $200.00 | Unknown | | ABA 11-57 | |
| | | | | $200.00 | Unknown | | ABA 11-57 | |
| 11/01/90 | $1,200.00 | 10/20/90 | 1527 | $1,200.00 | Hillview Engineering Corp | | "Insuff Funds" - ck bounced | |
| 11/01/90 | $5,013.00 | | | $5,013.00 | Unknown | | | |
| 11/14/90 | $10,256.07 | 11/02/90 | 1149 | $200.00 | Louis Bewley | | | |
| | | 11/09/90 | 1161 | $200.00 | Louis Bewley | Rent | | |
| | | 11/09/90 | 630 | $650.00 | James Morrow | Rent | | |
| | | 11/09/90 | 1928 | $550.00 | Piazza Mobil Sweeping | | | |
| | | 11/06/90 | 1400 | $1,400.00 | Alan Hosking | 125 Northgate | Payable: George Maciel Trucking Inc | |
| | | 11/09/90 | 1760 | $1,000.00 | BAMA Equipment | | | |
| | | 11/09/90 | 1203 | $975.00 | J.S.J. Pipeline Co. | Rent Office Nov Dec Jan | | |
| | | 11/07/90 | 4065 | $653.00 | Daniel Hernandez | | | |
| | | 10/17/90 | 3048 | $1,000.00 | Money Order | | Payable to John Alves | |
| | | 11/10/90 | 5477 | $2,428.07 | Wesley E. Bassett Trucking | 89 Pete Cab | Payable: Newark Truck & Body | |
| | | 11/01/90 | 347 | $1,200.00 | Jeff Varnel | | BofA Money Order | |
| 11/23/90 | $5,592.32 | 11/10/90 | 1255 | $500.00 | Daniel Parquette | Nov Rent | | |
| | | 11/16/90 | 1767 | $942.32 | BAMA Equipment | | Payable: Alviso Rock | |
| | | 11/13/90 | 4811 | $1,000.00 | Taco Bravo | | | |

**THE BANK OF MILPITAS  ACCOUNT 512-001-300466  "GEORGE A. MACIEL"**

**DEPOSITS - 1990**

| Deposit Date | Deposit Amount | Check Date | Check Number | Check Amount | Payor | Check Memos | Comments | Less Cash |
|---|---|---|---|---|---|---|---|---|
| | | 11/21/90 | 566 | $3,000.00 | Lavrar Trucking | | Loan | |
| | | 11/21/90 | 5818 | $150.00 | George Maciel Trucking | | Payable: Cash | |
| 11/27/90 | $2,800.00 | 11/26/90 | 1171 | $400.00 | Louis Bewley | Rent | | |
| | | 11/26/90 | 1172 | $200.00 | Louis Bewley | Rent | | |
| | | 09/03/90 | 38433 | $2,200.00 | Adriatic Insurance Company | Collision-Final Replacing 38204 | | |
| 12/06/90 | $7,443.29 | 11/29/90 | 1269 | $500.00 | Daniel Parquette | Rent Dec | | |
| | | 11/29/90 | 3574 | $2,506.50 | George Maciel Trucking | | | |
| | | 11/29/90 | 1561 | $2,506.50 | Alviso Rock Inc | | | |
| | | 12/03/90 | 21258 | $1,500.00 | Contract Transportation Service | | | |
| | | 11/13/90 | 35455 | $430.29 | Granite Rock | | Payable: Alviso Rock Inc. | |
| 12/13/90 | $67,256.00 | 11/19/90 | 2198795 | $67,256.00 | Transamerica Insurance Group | | Payable: Alviso Rock | |
| 12/19/90 | $8,644.10 | 12/10/90 | 400716766 | $8,644.10 | Progressive Companies | Legal Billing | Payable: George Maciel Trucking | |
| 12/27/90 | $3,594.14 | 12/19/90 | 65686 | $1,310.14 | CNA Insurance Companies | Repairs/Downtime | Payable: George Maciel Trucking | |
| | | 12/21/90 | 5534 | $1,034.00 | Edron Towing and Recovery | Repair #65 Front End | Payable: Newark Truck & Body | |
| | | 12/21/90 | 2453 | $1,250.00 | Michael Mitchem | Interest on Loan | | |
| 12/31/90 | $15,606.29 | 12/31/90 | | $15,606.29 | Interest for the Year | | | |
| **TOTAL** | **$516,524.02** | | | **$516,524.02** | | | | **$(14,200.00)** |

**THE BANK OF MILPITAS  ACCOUNT 512-001-300466  "GEORGE A. MACIEL"**

**DEPOSITS - 1991**

| Deposit Date | Deposit Amount | Check Date | Check Number | Check Amount | Payor | Check Memos | Comments | Less Cash |
|---|---|---|---|---|---|---|---|---|
| 01/08/91 | $3,016.79 | 12/31/90 | 15172 | $3,016.79 | Jess' Trucking Inc. | | Payable: Newark Truck & Body | |
| 01/17/91 | $3,690.92 | 01/08/91 | 3552 | $850.51 | Osborne Lumber Co. Inc. | 0243 | Payable: Newark Truck & Body | |
| | | 01/08/91 | 1952 | $550.00 | Piazza Mobil Sweeping | | | |
| | | 01/11/91 | 6095 | $587.41 | George Maciel Trucking Inc. | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **THE BANK OF MILPITAS  ACCOUNT 512-001-300466  "GEORGE A. MACIEL"** | | | | | | | | |
| **DEPOSITS - 1991** | | | | | | | | |
| | | | | | | | | |
| *Deposit Date* | *Deposit Amount* | *Check Date* | *Check Number* | *Check Amount* | *Payor* | *Check Memos* | *Comments* | *Less Cash* |
| | | 01/05/91 | 4116 | $653.00 | Daniel Hernandez Jr. | | | |
| | | 01/16/91 | 672 | $650.00 | James Morrow | Rent | | |
| | | 12/31/90 | 1209 | $200.00 | Louis Bewley | | | |
| | | 01/04/91 | 1210 | $200.00 | Louis Bewley | Jan #1 | | |
| 02/14/91 | $10,074.02 | 02/11/91 | 2543 | $384.25 | Salinas Trucking | Repair Left Front ?? & Paint | Payable: Newark Truck & Body | |
| | | 12/21/90 | 1236 | $1,000.00 | Ken Ash dba Kens Trucking | | Payable: Newark Truck & Body | |
| | | 02/01/91 | 4480 | $5,067.57 | Hawaiian Insurance Group | MAC Contracting | Payable: Newark Truck & Body | |
| | | 02/09/91 | 1289 | $975.00 | J.S.J. Pipeline Co. | Office Rent Feb, Mar, Apr | | |
| | | 02/07/91 | 1971 | $550.00 | Piazza Mobil Sweeping | February | | |
| | | 02/08/91 | 606 | $1,500.00 | Lavrar Trucking | Repairs Mack | | |
| | | 02/08/91 | 14124 | $597.20 | LMC Metals | | | |
| 02/25/91 | $10.00 | 02/25/91 | | $0.00 | Deposit Correction | | | |
| 02/25/91 | $5,142.12 | 02/08/91 | 1249 | $200.00 | Louis Bewley | Rent Feb | | |
| | | 02/21/91 | 1847 | $2,476.06 | Alviso Rock Inc. | | | |
| | | | | $2,476.06 | Unknown | | | |
| 02/25/91 | $13,900.00 | 02/25/91 | 1842 | $1,000.00 | BAMA Equipment | October 1990 | | |
| | | 02/24/91 | 1308 | $1,000.00 | Daniel Parquette | | | |
| | | 02/25/91 | 1846 | $600.00 | BAMA Equipment | Dec 1990 | | |
| | | 02/25/91 | 1841 | $11,300.00 | BAMA Equipment | Reimburse Reliance End Dump | | |
| 03/01/91 | $5,345.80 | 02/14/91 | 9645 | $1,000.00 | Richard Moneymaker Lowbed | Payment on #0240 | Payable: Newark Truck & Body | |
| | | 02/26/91 | 1349 | $90.00 | Mission Valley Diesel | | | |
| | | 02/27/91 | 12831 | $2,017.01 | Ben Salamoni Trucking Service | | Payable: Newark Truck & Body | |
| | | 02/27/91 | 48153214 | $429.39 | Wausau Insurance Co. | Supplement to Repair Inv #0246 | Payable: Newark Truck & Body | |
| | | 02/21/91 | 11027 | $1,809.40 | Circo Recyclers | | Payable: Newark Truck & Body | |
| 03/28/91 | $12,378.57 | 03/19/91 | 716 | $650.00 | James Morrow | Rent | | |
| | | 03/25/91 | | $6,250.00 | Marcelo Rodriguez Jr. | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **THE BANK OF MILPITAS  ACCOUNT 512-001-300466  "GEORGE A. MACIEL"** | | | | | | | | |
| **DEPOSITS - 1991** | | | | | | | | |
| | | | | | | | | |
| _Deposit Date_ | _Deposit Amount_ | _Check Date_ | _Check Number_ | _Check Amount_ | _Payor_ | _Check Memos_ | _Comments_ | _Less Cash_ |
| | | 03/25/91 | 904802 | $5,478.57 | State Farm Mutual Auto Ins. | Property Damage | | |
| 04/22/91 | $4,000.00 | 04/22/91 | CM | $4,000.00 | Reversal of 4/19/91 Transfer | | | |
| 04/26/91 | $15,081.35 | 04/08/91 | 336113 | $3,228.20 | Guaranty National Ins co. | Claim for Rodriguez Trkg | Payable: Dale Hinson & Newark Truck & Body | |
| | | 04/17/91 | 6800 | $2,277.50 | MAC Contracting Inc. | | Payable: Newark Truck & Body | |
| | | 04/09/91 | 40697 | $3,721.86 | Adriatic Insurance Company | Collision Final | Payable: Alviso Rock Inc. | |
| | | 04/04/91 | 4142 | $901.67 | Osborne Lumber Co. Inc. | 0258 | Payable: Newark Truck & Body | |
| | | 04/25/91 | 2023 | $2,476.06 | Alviso Rock Inc. | | | |
| | | | 4297 | $2,476.06 | George Maciel Trucking Inc. | | | |
| 05/09/91 | $3,721.86 | 04/09/91 | 40697 | $3,721.86 | Adriatic Insurance Company | Collision Final | Redeposit of above | |
| 06/10/91 | $1,428.00 | | | $1,428.00 | Unknown | | | |
| 06/13/91 | $8,250.00 | 06/07/91 | 7250 | $8,250.00 | MAC Contracting Inc. | | Payable: Newark Truck & Body | |
| 07/02/91 | $7,853.78 | 06/25/91 | 1325 | $392.78 | Ken Ash dba Kens Trucking | | | |
| | | | | $7,461.00 | Unknown | | | |
| 07/09/91 | $800.00 | 07/02/91 | 6838 | $800.00 | George Maciel Trucking Inc. | DiSalvo Loan | | |
| 07/09/91 | $40,000.00 | 06/28/91 | 991463 | $42,887.00 | Republic Indemnity | 3/4/89 to 3/4/90 | Payable: George Maciel Trucking | |
| | | 06/28/91 | | $(2,887.00) | Less Cash | | | ($2,887.00) |
| 07/18/91 | $4,332.25 | 07/09/91 | 2062 | $550.00 | Piazza Mobil Sweeping | | | |
| | | 07/16/91 | 1424 | $975.00 | J.S.J. Pipeline Co. | Office Rent 8-9 8-10-91 | | |
| | | 07/12/91 | 126 | $100.00 | Collette M. Krull | Loan | | |
| | | 07/16/91 | 792 | $650.00 | James Morrow | | | |
| | | 07/05/91 | 1348 | $200.00 | Louis Bewley | | | |
| | | 07/12/91 | 6484 | $857.25 | Heavy Metal Express | | Payable: Newark Truck & Body | |
| | | | | $1,000.00 | Unknown | | | |
| 08/05/91 | $7,344.92 | | | $7,344.92 | Unknown | | | |
| 08/13/91 | $8,050.00 | 08/09/91 | 1778 | $500.00 | Pacific Water Truck & Equipment | 18 Farm Lane | | |
| | | 08/08/91 | 2086 | $550.00 | Piazza Mobil Sweeping | Rent Yard | | |
| | | 08/02/91 | 1357 | $300.00 | Louis Bewley | Rent | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **THE BANK OF MILPITAS  ACCOUNT 512-001-300466  "GEORGE A. MACIEL"** | | | | | | | | |
| **DEPOSITS - 1991** | | | | | | | | |
| | | | | | | | | |
| Deposit Date | Deposit Amount | Check Date | Check Number | Check Amount | Payor | Check Memos | Comments | Less Cash |
| | | 08/03/91 | 568 | $700.00 | Ricky or Ana M. Flores | Rent | | |
| | | | | $6,000.00 | Unknown | | | |
| 08/21/91 | $3,274.06 | | | $3,274.06 | Unknown | | | |
| 09/09/91 | $1,679.00 | 07/19/91 | 1498 | $79.00 | Mission Valley Diesel | | | |
| | | 09/03/91 | 2048 | $600.00 | BAMA Equipment | Sept Rent | | |
| | | | | $1,000.00 | Unknown | | | |
| 09/24/91 | $16,241.00 | 09/09/91 | 110752 | $1,615.30 | USPCI | | Payable: George Maciel Trucking | |
| | | 09/13/91 | | $11,613.00 | United States Treasury | Tax Refund | | |
| | | 09/23/91 | 1416 | $1,000.00 | Daniel Parquette | Aug & Sept Rent | May have bounced - 10/1 DM | |
| | | 09/06/91 | 1376 | $200.00 | Louis Bewley | Rent | | |
| | | 09/20/91 | 1864 | $310.00 | Paul R & Marianne Bourgeois | | | |
| | | 09/13/91 | 1383 | $200.00 | Louis Bewley | Rent | | |
| | | 09/02/91 | 4033 | $653.00 | Daniel Hernandez Jr. | | | |
| | | 09/16/91 | 836 | $650.00 | James Morrow | Rent | | |
| 10/08/91 | $4,600.70 | 10/05/91 | 611 | $700.00 | Ricky or Ana M. Flores | Rent | | |
| | | 09/23/91 | 1626 | $950.00 | Cook's Peninsula Pools Inc. | 155 Tobin Clark, Hillsboro | | |
| | | 09/21/91 | 1895 | $500.00 | C.K. Transport | Final Payment for Pete Hood | | |
| | | 10/04/91 | 938 | $600.00 | Mary Griffin | Pool Water | | |
| | | 10/04/91 | 1874 | $1,850.70 | Pacific Water Truck & Equipment | Inv. #0271 | Payable to Newark Truck & Body | |
| 11/22/91 | $4,992.53 | 11/18/91 | 894 | $650.00 | James Morrow | Rent | | |
| | | | | $4,342.53 | Unknown | | | |
| 12/03/91 | $7,286.68 | 11/12/91 | 10015 | $7,286.68 | John Deere Insurance Company | Any and all property damage cl | | |
| 12/16/91 | $2,940.60 | 12/01/91 | 3491 | $500.00 | P.J. Vierra | Rent on Boscell Dec. | | |
| | | 11/01/91 | 6806 | $2,200.60 | Calfarm Insurance Company | Supplemental Payment Collision | Payable: Newark Truck & Body | |
| | | 12/12/91 | 1125 | $40.00 | Gerardo Ozuna | Ozuna Trucking Parts-Step | Payable: Newark Truck & Body | |
| | | 12/06/91 | 1422 | $200.00 | Louis Bewley | Rent | | |
| 12/30/91 | $10,678.72 | 12/27/91 | 2443 | $2,508.46 | Alviso Rock Inc. | | | |

**THE BANK OF MILPITAS  ACCOUNT 512-001-300466  "GEORGE A. MACIEL"**

**DEPOSITS - 1991**

| Deposit Date | Deposit Amount | Check Date | Check Number | Check Amount | Payor | Check Memos | Comments | Less Cash |
|---|---|---|---|---|---|---|---|---|
| | | 12/27/91 | 5440 | $2,508.46 | George Maciel Trucking Inc. | | | |
| | | 12/27/91 | 4055 | $250.00 | Sines Trucking Company, Inc. | Yard Rent Space | | |
| | | 12/23/91 | 21065 | $2,329.86 | Von Euw & L.J. Nunes Trucking | | | |
| | | 12/20/91 | 1848 | $500.00 | Stockton Semi Trailer Inc. | Rent | | |
| | | 12/17/91 | 911 | $88.94 | Ferma Corporation | Balance on Hood repair | Payable: Newark Truck & Body | |
| | | 12/16/91 | 640 | $1,600.00 | Ferma Corporation | Job 2989 | Payable: Newark Truck & Body | |
| | | 12/14/91 | 4306 | $653.00 | Daniel Hernandez Jr. | | | |
| | | 12/20/91 | 22228 | $240.00 | General Motors Acceptance Corp | | Payable: Newark Truck & Body | |
| 12/30/91 | $20,000.00 | 12/30/91 | CM | $20,000.00 | Telephonic Transfer | | From BM 0593 | |
| 12/31/91 | $3,095.55 | 12/31/91 | | $3,095.55 | Regular Interest for Year | | | |
| 12/31/91 | $12,034.25 | 12/31/91 | | $12,034.25 | TCD Interest for Year | | | |
| **TOTAL** | **$241,243.47** | | | **$241,243.77** | | | | **($2,887.00)** |

**THE BANK OF MILPITAS  ACCOUNT 512-001-300466  "GEORGE A. MACIEL"**

**DEPOSITS - 1992**

| Deposit Date | Deposit Amount | Check Date | Check Number | Check Amount | Payor | Check Memos | Comments | Less Cash |
|---|---|---|---|---|---|---|---|---|
| 01/23/92 | $3,053.00 | 01/10/92 | 2235 | $550.00 | Piazza Mobil Sweeping | Yard Rent | | |
| | | 01/15/92 | 1888 | $500.00 | Stockton Semi Trailer | Dec Rent | | |
| | | 01/17/92 | 676 | $200.00 | Ricky or Ana Flores | Rent | | |
| | | 01/15/92 | 932 | $650.00 | James Morrow | Rent | | |
| | | 01/11/92 | 4338 | $653.00 | Daniel Hernandez | | | |
| | | 01/11/92 | 667 | $500.00 | Ricky or Ana Flores | Rent | | |
| 02/06/92 | $8,113.06 | 02/04/92 | 271003216 | $13,000.00 | David Mitchem | Wells Fargo Cashier's Check | Payable: David Mitchem | |
| | | 01/28/92 | 1378 | $125.00 | Analytical Maintenance Service | | | |
| | | 01/29/92 | 1157 | $175.34 | Gerardo Ozuna | Hood Ozuna Trucking | Payable: Newark Truck & Body | |
| | | 02/01/92 | 3057 | $200.00 | Cirimeless Construction | Peterbuilt Fender | Payable: Newark Truck & Body | |
| | | 01/31/92 | 1464 | $200.00 | Louis Bewley | Rent | | |
| | | 01/07/92 | 621 | $12.72 | John & Annette Strong | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| THE BANK OF MILPITAS  ACCOUNT 512-001-300466  "GEORGE A. MACIEL" | | | | | | | | |
| DEPOSITS - 1992 | | | | | | | | |
| | | | | | | | | |
| *Deposit Date* | *Deposit Amount* | *Check Date* | *Check Number* | *Check Amount* | *Payor* | *Check Memos* | *Comments* | *Less Cash* |
| | | 01/25/92 | 1007 | $200.00 | Steven Taylor | Money Owed | | |
| | | 02/07/92 | 685 | $700.00 | Ricky or Ana Flores | | Bounced - 2/14/92 DM | |
| | | | | $(6,500.00) | Less Cash | | | $(6,500.00) |
| 03/03/92 | $100,000.00 | 03/03/92 | CM | $100,000.00 | Balance from COD #001291269 | | | |
| 03/04/92 | $4,821.00 | 03/03/92 | 8153 | $2,449.00 | George Maciel Trucking Inc. | DMV | | |
| | | 03/02/92 | 4373 | $653.00 | Daniel Hernandez | | | |
| | | 03/02/92 | 700 | $700.00 | Ricky or Ana Flores | Feb 92 Rent | | |
| | | 02/26/92 | 1954 | $369.00 | Valley Recycling | 2 Doors | Payable: Newark Truck & Body | |
| | | 03/03/92 | 1965 | $250.00 | Charles Lamb | | | |
| | | 03/02/92 | 701 | $200.00 | Ricky or Ana Flores | March Rent 92 | | |
| | | 02/29/92 | 1494 | $200.00 | Louis Bewley | Rent | | |
| 03/04/92 | $136,945.68 | 03/03/92 | 5437 | $136,945.68 | Cashier's Ck to Santa Clara Title Co | "Not used for intended purpose" | | |
| 04/24/92 | $1,940.00 | 04/15/92 | 20417 | $890.00 | D. Hill Trucking | Invoice 0280 | Payable: Newark Truck & Body | |
| | | 04/20/92 | 0567 | $200.00 | Alameda Truck Parts & Equip | | | |
| | | 04/15/92 | 978 | $650.00 | James Morrow | Rent | | |
| | | 04/17/92 | 1526 | $200.00 | Louis Bewley | Rent | | |
| 05/15/92 | $7,657.22 | 03/20/92 | 8140454 | $7,657.22 | California Land Title Co. | Escrow No. 331486-LM | | |
| 06/03/92 | $100,000.00 | 06/03/92 | CM | $100,000.00 | Balance from #01-201318 | | | |
| 06/04/92 | $1,625.00 | 05/13/92 | 124210 | $325.00 | Trammell Crow Residential Serv | | | |
| | | 05/22/92 | 2174 | $500.00 | Valley Recycling | | | |
| | | 05/22/92 | 1547 | $200.00 | Louis Bewley | Rent | | |
| | | 05/29/92 | 1548 | $200.00 | Louis Bewley | Rent | | |
| | | 05/15/92 | 1544 | $200.00 | Louis Bewley | Rent | | |
| | | 05/08/92 | 1543 | $200.00 | Louis Bewley | Rent | | |
| 06/12/92 | $1,972.66 | | 1014 | $650.00 | James Morrow | | | |
| | | 06/05/92 | 19680 | $1,322.66 | D. Hill Trucking | | Payable: Newark Truck & Body | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **THE BANK OF MILPITAS  ACCOUNT 512-001-300466  "GEORGE A. MACIEL"** | | | | | | | | |
| **DEPOSITS - 1992** | | | | | | | | |
| | | | | | | | | |
| *Deposit Date* | *Deposit Amount* | *Check Date* | *Check Number* | *Check Amount* | *Payor* | *Check Memos* | *Comments* | *Less Cash* |
| 7/23/92 | $9,144.50 | 07/13/92 | 2375 | $550.00 | Piazza Mobil Sweeping | Yard Rent | | |
| | | 07/04/92 | 24543668 | $672.00 | State of California | EDD | Payable: Felix Dominguez | |
| | | 07/06/92 | 758 | $700.00 | Ana Flores | | | |
| | | 07/10/92 | 4466 | $653.00 | Daniel Hernandez | | | |
| | | 07/15/92 | 1050 | $650.00 | James Morrow | Rent | | |
| | | 07/02/92 | 1684 | $2,000.00 | Truck Trailer Sales, Inc. | | | |
| | | 06/27/92 | 46949 | $49.50 | Washington Hospital Healthcare | | | |
| | | 07/14/92 | 25130367 | $3,870.00 | Ritchie Bros. | | | |
| 08/04/92 | $57,472.00 | 07/31/92 | 996887 | $57,472.00 | Republic Indemnity | Policy Workers Comp | Payable: Alviso Rock | |
| 08/05/92 | $975.00 | 08/05/92 | 1931 | $975.00 | J.S.J. Pipeline | Office Rent July-Sept 92 | | |
| 08/25/92 | $15,479.01 | 08/18/92 | 102489409 | $10,636.37 | State Farm Mutual Auto Insur | Property Damage Liability | Payable: Newark Truck & Body | |
| | | 08/07/92 | 2938 | $2,472.46 | Alviso Rock, Inc. | | | |
| | | 08/13/92 | 12064 | $500.00 | Richard Money Maker Lowbed | On Account | Payable: Newark Truck & Body | |
| | | 08/05/92 | 2405 | $550.00 | Piazza Mobil Sweeping | Rent | | |
| | | 08/11/92 | 25099 | $17.18 | PG&E | Refund Account | | |
| | | 08/17/92 | 1066 | $650.00 | James Morrow | Rent | | |
| | | 08/10/92 | 4493 | $653.00 | Daniel Hernandez | | | |
| 09/08/92 | $7,981.78 | 07/25/92 | 6574 | $728.19 | George Maciel Trucking Inc. | | Payable: Moneymaker Lowbed | |
| | | 09/02/92 | 2435 | $550.00 | Piazza Mobil Sweeping | Rent | | |
| | | 09/04/92 | 2069 | $72.00 | Mission Valley Diesel | | | |
| | | 08/28/92 | 2998 | $2,472.46 | Alviso Rock, Inc. | | | |
| | | 08/27/92 | 3 | $100.00 | Dad's | | | |
| | | 08/21/92 | 1611 | $200.00 | Louis Bewley | Rent | | |
| | | 09/04/92 | 1622 | $200.00 | Louis Bewley | Rent | | |
| | | 08/26/92 | 2581 | $277.00 | Scott Balcon | | | |
| | | 09/03/92 | 814 | $700.00 | Ana Flores | Sept Rent | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **THE BANK OF MILPITAS  ACCOUNT 512-001-300466  "GEORGE A. MACIEL"** | | | | | | | | |
| **DEPOSITS - 1992** | | | | | | | | |
| | | | | | | | | |
| *Deposit Date* | *Deposit Amount* | *Check Date* | *Check Number* | *Check Amount* | *Payor* | *Check Memos* | *Comments* | *Less Cash* |
| | | 09/01/92 | 1709 | $200.00 | Carlton Trucking | Pete Front Bumper | Payable: Newark Truck & Body | |
| | | 08/28/92 | 6882 | $2,481.96 | George Maciel Trucking Inc. | | | |
| | | | | $0.17 | Deposit Correction | | | |
| 09/23/92 | $18,398.00 | 09/12/92 | 4534 | $653.00 | Daniel Hernandez | That's All Folks! Thank You | | |
| | | 09/11/92 | 1631 | $200.00 | Louis Bewley | Rent | | |
| | | 09/11/92 | | $16,895.00 | United States Treasury | Tax Refund | | |
| | | 09/16/92 | 1078 | $650.00 | James Morrow | Rent | | |
| 10/21/92 | $20,705.67 | 10/13/92 | 1135 | $10,381.17 | First American Title Insurance | Escrow No. 208810AM | | |
| | | 10/09/92 | 134 | $10,324.50 | Dennis Ponte, Inc | | | |
| 11/05/92 | $4,628.46 | 11/02/92 | 533 | $1,000.00 | Margaret or Kelvin Deemer | Rent + $350 Back Pay | | |
| | | 11/04/92 | 864 | $700.00 | Ana Flores | Rent Nov | | |
| | | 10/29/92 | 1020 | $220.00 | Dad's Enterprises | | | |
| | | 10/23/92 | 1649 | $200.00 | Louis Bewley | Rent | | |
| | | 10/30/92 | 3140 | $2,508.46 | Alviso Rock, Inc. | | | |
| 12/10/92 | $2,892.90 | 12/09/92 | 3065 | $2,892.90 | Dean and Suzanne Mack | | | |
| 12/31/92 | $3,096.07 | 12/31/92 | | $3,096.07 | Regular Interest for Year | | | |
| 12/31/92 | $2,593.82 | 12/31/92 | | $2,593.82 | TCD Interest for Year | | | |
| **TOTAL** | **$509,494.83** | | | **$509,494.83** | | | | **$(6,500.00)** |
| | | | | | | | | |

**APPENDIX "C"**

| THE BANK OF MILPITAS ACCOUNT 512-001-303171 "G M INVESTMENTS" | | | | | | | |
|---|---|---|---|---|---|---|---|
| **DEPOSITS - 1991** | | | | | | | |
| | | | | | | | |
| *Deposit Date* | *Deposit Amount* | *Check Date* | *Check Number* | *Check Amount* | *Payor* | *Check Memos* | *Comments* |
| 06/04/91 | $1,568.38 | | | $1,568.38 | Unknown | | Transfer from 001-3-1856 (per sig card) |
| 06/05/91 | $8,900.00 | | | $8,400.00 | Unknown | | ABA 90-19 |
| | | | | $500.00 | Unknown | | ABA 90-785 |
| 06/10/91 | $250.00 | | | $250.00 | Unknown | | |
| 07/09/91 | $8,650.00 | | | $8,650.00 | Unknown | | |
| 07/18/91 | $500.00 | | | $500.00 | Unknown | | |
| 08/13/91 | $8,900.00 | 08/01/91 | 3418 | $500.00 | P J Vierra | Aug Rent Boscell | |
| | | 08/02/91 | 20618 | $8,400.00 | P.S.B. Trucking Inc | | |
| 09/06/91 | $12.00 | 09/06/91 | DM | $12.00 | Reversal of Ck Charge | | |
| 09/09/91 | $8,900.00 | 09/01/91 | 3439 | $500.00 | P J Vierra | Rent Boscell Sept | |
| | | 09/05/91 | 10787 | $8,400.00 | P.S.B. Trucking Inc | | Payable to GM Investments |
| 10/08/91 | $9,100.00 | 10/01/91 | 20947 | $8,400.00 | P.S.B. Trucking Inc | | Payable to M&G Investments |
| | | 10/01/91 | 3455 | $500.00 | P J Vierra | Rent Oct Boscell | |
| | | 09/27/91 | 1389 | $200.00 | Louis W. Bewley | | |
| 10/16/91 | $2,903.00 | 10/07/91 | 2134 | $550.00 | Piazza Mobil Sweeping | | |
| | | 10/09/91 | 1391 | $200.00 | Louis W. Bewley | Rent | |
| | | 10/11/91 | 1428 | $1,500.00 | Daniel T. Parquette | | ck bounced |
| | | 10/10/91 | 4005 | $653.00 | Daniel Hernandez | OOPS | |
| 12/31/91 | $127.69 | 12/31/91 | | $127.69 | Interest for the Year | | |
| **TOTAL** | **$49,811.07** | | | **$49,811.07** | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **THE BANK OF MILPITAS  ACCOUNT 512-001-303171  "G M INVESTMENTS"** | | | | | | | |
| **DEPOSITS - 1992** | | | | | | | |
| | | | | | | | |
| *Deposit Date* | *Deposit Amount* | *Check Date* | *Check Number* | *Check Amount* | *Payor* | *Check Memos* | *Comments* |
| 01/06/92 | $9,150.00 | 12/27/91 | 21465 | $8,400.00 | P.S.B. Trucking Inc. | | Payable to M & G Investments |
| | | 01/01/92 | 3509 | $500.00 | PJ Vierra | Rent on Boscell | |
| | | 01/02/92 | 1921 | $250.00 | Charles and Rose Lamb | | |
| 01/23/92 | $4,306.20 | 01/15/91 | 6892 | $2,493.20 | Robertson Trucking Service | | |
| | | 12/30/91 | 485 | $1,813.00 | John Deere Insurance Co. | | Insurance claim |
| 02/06/92 | $9,000.00 | 02/03/92 | 21690 | $8,400.00 | P.S.B. Trucking Inc. | | Payable to M & G Investments |
| | | 01/24/92 | 1454 | $600.00 | Louis Bewley | Rent | |
| 02/12/92 | $3,500.00 | 02/10/92 | 180 | $3,500.00 | George A. Maciel | | from acct 300466 |
| 03/06/92 | $9,400.00 | 03/03/92 | 1952 | $500.00 | Stockton Semi Trailer Inc | | |
| | | 03/06/92 | 3548 | $500.00 | PJ Vierra | | |
| | | 03/03/92 | 21859 | $8,400.00 | P.S.B. Trucking Inc. | | Payable to M & G Investments |
| 04/07/92 | $8,400.00 | 04/02/92 | 22003 | $8,400.00 | P.S.B. Trucking Inc. | | Payable to M & B Investments |
| 05/07/92 | $8,900.00 | 05/01/92 | 3595 | $500.00 | PJ Vierra | | |
| | | 05/07/92 | 22180 | $8,400.00 | P.S.B. Trucking Inc. | | Payable to M & B Investments |
| 05/15/92 | $350.00 | 05/07/92 | 2033 | $250.00 | Charles and Rose Lamb | Rent | |
| | | 05/11/92 | 628 | $100.00 | Dad's Enterprises | R.O. 9 | |
| 06/04/92 | $8,400.00 | 06/01/92 | 22351 | $8,400.00 | P.S.B. Trucking Inc. | | Payable to GM Investments |
| 06/12/92 | $903.00 | 06/02/92 | 2094 | $250.00 | Charles and Rose Lamb | Rent | |
| | | 06/06/92 | 4433 | $653.00 | Daniel and Cecelia Hernandez | | |
| 07/06/92 | $1,000.00 | 06/26/92 | 2351 | $500.00 | Piazza Mobil Sweeping | Engine 5 | |
| | | 06/01/92 | 3609 | $500.00 | PJ Vierra | Rent Boscell June | |
| 07/09/92 | $8,650.00 | 07/06/92 | 22567 | $8,400.00 | P.S.B. Trucking Inc. | | Payable to GM Investments |
| | | 06/30/92 | 4277 | $250.00 | Sines Trucking Company Inc. | Rent | |
| 07/23/92 | $1,364.00 | 07/15/92 | 2653 | $614.00 | Bank of West money order | | Payable to Newark Truck & Body |
| | | 07/01/92 | 3627 | $500.00 | PJ Vierra | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **THE BANK OF MILPITAS  ACCOUNT 512-001-303171  "G M INVESTMENTS"** | | | | | | | |
| **DEPOSITS - 1992** | | | | | | | |
| | | | | | | | |
| *Deposit Date* | *Deposit Amount* | *Check Date* | *Check Number* | *Check Amount* | *Payor* | *Check Memos* | *Comments* |
| | | 07/08/92 | 2116 | $250.00 | Charles and Rose Lamb | July (92) | |
| 08/04/92 | $500.00 | 07/24/92 | 11966 | $500.00 | Richard Moneymaker Lowbed | | Payable to Newark Body Shop |
| 08/05/92 | $800.00 | 08/01/92 | 775 | $800.00 | Ana M. Flores | Rent | |
| 08/05/92 | $8,400.00 | 07/29/92 | 22682 | $8,400.00 | P.S.B. Trucking Inc. | | Payable to GM Investments |
| 08/25/92 | $750.00 | 08/01/92 | 3656 | $500.00 | PJ Vierra | Rent Boscell Aug | |
| | | 08/11/92 | 2220 | $250.00 | Charles and Rose Lamb | Rent 41550 Boscell | |
| 09/08/92 | $9,150.00 | 09/01/92 | 3671 | $500.00 | PJ Vierra | Rent Boscell Sep | |
| | | 09/02/93 | 2245 | $250.00 | Charles and Rose Lamb | | |
| | | 09/01/92 | 22886 | $8,400.00 | P.S.B. Trucking Inc. | | Payable to GM Investments |
| 09/23/92 | $300.00 | 09/17/92 | 162 | $300.00 | Ross Hamilton | | |
| 10/09/92 | $9,400.00 | 10/05/92 | 23116 | $8,400.00 | P.S.B. Trucking Inc. | | Payable to GM Investments |
| | | | | $1,000.00 | Unknown | | |
| 10/21/92 | $550.00 | 10/13/92 | 2481 | $50.00 | Piazza Mobil Sweeping | | |
| | | 10/14/92 | 2479 | $500.00 | Piazza Mobil Sweeping | Rent | |
| 11/05/92 | $8,400.00 | | | $8,400.00 | Unknown | | |
| 11/10/92 | $750.00 | | | $750.00 | Unknown | | |
| 12/07/92 | $9,250.00 | | | $850.00 | Unknown | | |
| | | 12/01/92 | 23543 | $8,400.00 | P.S.B. Trucking Inc. | | Payable to GM Investments |
| 12/31/92 | $312.07 | 12/31/92 | | $312.07 | Interest for the Year | | |
| **TOTAL** | **$121,885.27** | | | **$121,885.27** | | | |
| | | | | | | | |

APPENDIX "D"

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| THE BANK OF MILPITAS  ACCOUNT 512-001-102605  "ALVISO ROCK/HK RACING" | | | | | | | |
| DEPOSITS - 1990 | | | | | | | |
| | | | | | | | |
| *Deposit Date* | *Deposit Amount* | *Check Date* | *Check Number* | *Check Amount* | *Payor* | *Check Memos* | *Comments* |
| 04/17/90 | $500.00 | 04/14/90 | 1282 | $500.00 | Hillview Engineering Corp | #69 Advertising | |
| 04/30/90 | $2,493.59 | 04/27/90 | 522 | $2,493.59 | George Maciel | Closing of Account | from  WF 384835 |
| 05/07/90 | $1,525.00 | 05/03/90 | 6202 | $1,025.00 | Alviso Rock Inc | | Payable to Alviso Rock/HK Racing |
| | | 04/18/90 | 3707 | $500.00 | BBA, Inc. NASCAR Fund Trustee | | Payable to Howard Kaeding |
| 05/18/90 | $2,055.00 | 05/17/90 | 4735 | $855.00 | George Maciel Trucking Inc. | | Payable to Alviso Rock/HK Racing |
| | | 05/17/90 | 1493 | $1,200.00 | BAMA Equipment | Race #4,5,6,7,8 & 9 | |
| 06/19/90 | $1,505.00 | 06/06/90 | 3822 | $25.00 | Northern Auto Racing Club Inc | | Payable to Howard Kaeding |
| | | 06/18/90 | 6240 | $545.00 | Alviso Rock Inc | | Payable to Alviso Rock/HK Racing |
| | | 06/14/90 | 4929 | $335.00 | George Maciel Trucking Inc. | Advertisement | Payable to Alviso Rock/HK Racing |
| | | 06/19/90 | 1539 | $600.00 | BAMA Equipment | #69 | Payable to Alviso Rock/HK Racing |
| 07/10/90 | $500.00 | 07/10/90 | CM | $500.00 | Deposit Correction | No Deposit Ticket | |
| 07/10/90 | $2,010.00 | 07/06/90 | 6247 | $2,010.00 | Alviso Rock Inc | | Payable to Alviso Rock/HK Racing |
| 07/26/90 | $1,960.00 | 07/26/90 | | $750.00 | BAMA Equipment | | Payable to Alviso Rock/HK Racing |
| | | 07/24/90 | 5166 | $1,160.00 | George Maciel Trucking Inc. | | Payable to Alviso Rock/HK Racing |
| | | 07/05/90 | 19888 | $50.00 | Jack McCoy Enterprises | | Payable to Howard Kaeding |
| 08/06/90 | $210.00 | 07/15/90 | 4102 | $210.00 | Northern Auto Racing Club Inc | | Payable to Howard Kaeding |
| 08/15/90 | $715.00 | 07/24/90 | 4163 | $715.00 | Northern Auto Racing Club Inc | | Payable to Howard Kaeding |
| 09/14/90 | $1,000.00 | 09/14/90 | 1277 | $300.00 | George A. Maciel | Sprint Car #69 | from acct 200593 |
| | | 09/06/90 | 1918 | $700.00 | High-Five Pizza Co. | Sponsorship | Payable to Alviso Rock/HK Racing |
| 09/25/90 | $850.00 | 09/18/90 | 1681 | $750.00 | BAMA Equipment | Sponsor | |
| | | 09/07/90 | 2255 | $50.00 | BBA, Inc. NASCAR Fund Trustee | | Payable to Alviso Rock |
| | | 09/13/90 | 2319 | $50.00 | BBA, Inc. NASCAR Fund Trustee | | Payable to Alviso Rock |
| 10/23/90 | $975.00 | | | $500.00 | Unknown | | ABA 90-4176 |
| | | | | $475.00 | Unknown | | ABA 11-35 |
| 11/08/90 | $30.00 | 11/08/90 | | $30.00 | Reversal of Service Charge | | |
| 11/23/90 | $131.75 | 11/23/90 | | $131.75 | George A. Maciel | | from  acct 300466 |
| 12/27/90 | $351.23 | 11/29/90 | 68619 | $351.23 | Awards & Achievement Bureau | | Payable to Howard Kaeding |
| **TOTAL** | **$16,811.57** | | | **$16,811.57** | | | |

| | | | | THE BANK OF MILPITAS ACCOUNT 512-001-102605 "ALVISO ROCK/HK RACING" | | | |
|---|---|---|---|---|---|---|---|
| **DEPOSITS - 1991** | | | | | | | |
| | | | | | | | |
| *Deposit Date* | *Deposit Amount* | *Check Date* | *Check Number* | *Check Amount* | *Payor* | *Check Memos* | *Comments* |
| 04/04/91 | $12.00 | 04/04/91 | CM | $12.00 | Reject Charge Rev. | | |
| 04/04/91 | $1,408.00 | 04/04/91 | 1430 | $310.00 | George A. Maciel | | from acct 200593 |
| | | 03/30/91 | 1602 | $98.00 | Robin Parden | Terry NASCAR | |
| | | 03/21/91 | 2248 | $1,000.00 | High-Five Pizza Co. | Sponsorship | Payable to Alviso Rock Racing |
| 04/10/91 | $590.00 | | | $590.00 | Currency | | 10x$50 3x$20 2x$10 10x$1 |
| 04/30/91 | $245.00 | | | $245.00 | Currency | | |
| 05/28/91 | $12.00 | 05/28/91 | CM | $12.00 | Reject Charge Rev. | | |
| 05/29/91 | $1,500.00 | | CM | $1,500.00 | Phone Transfer | | from acct 300466 |
| 06/11/91 | $1,310.00 | | | $1,310.00 | Unknown | | ABA 11-35 |
| 07/02/91 | $1,560.00 | | | $1,560.00 | Unknown | | |
| 07/09/91 | $1,060.00 | | | $1,060.00 | Currency | | |
| 08/05/91 | $600.00 | | | $600.00 | Unknown | | |
| 08/13/91 | $500.00 | 08/13/91 | 1056 | $500.00 | GM Investments | Sprint | from acct 3171 |
| 08/21/91 | $1,600.00 | | | $1,600.00 | Unknown | | |
| 09/09/91 | $2,000.00 | 09/07/91 | 163 | $2,000.00 | George A. Maciel | | |
| 09/24/91 | $360.00 | 09/11/91 | 15150 | $360.00 | California Racing Association | | |
| 11/06/91 | $90.00 | 10/15/91 | 6514 | $90.00 | Northern California Racing Club | | Payable to George Maciel/Alviso Rock |
| 12/16/91 | $1,550.00 | 12/11/91 | 2195 | $550.00 | Piazza Mobil Sweeping | | |
| | | 12/07/91 | 634 | $700.00 | Ricky or Ana M. Flores | Dec Rent | |
| | | 12/12/91 | 1192 | $300.00 | Gradetech Inc | Headlights for #203 | |
| **TOTAL** | **$14,397.00** | | | **$14,397.00** | | | |

| | | | | THE BANK OF MILPITAS ACCOUNT 512-001-102605 "ALVISO ROCK/HK RACING" | | | | |
|---|---|---|---|---|---|---|---|---|
| **DEPOSITS - 1992** | | | | | | | | |
| | | | | | | | | |
| *Deposit Date* | *Deposit Amount* | *Check Date* | *Check Number* | *Check Amount* | *Payor* | *Check Memos* | *Comments* | *Less Cash* |
| 02/12/92 | $3,500.00 | 02/10/92 | 1077 | $3,500.00 | GM Investments | Advertising Sprint Car | from acct 303171 | |
| 04/07/92 | $7,700.00 | 04/03/92 | 3465 | $200.00 | West Coast Aggregates Inc. | | Payable to Alviso Rock/HK Racing | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| THE BANK OF MILPITAS  ACCOUNT 512-001-102605  "ALVISO ROCK/HK RACING" | | | | | | | |
| DEPOSITS - 1992 | | | | | | | |
| | | | | | | | |
| Deposit Date | Deposit Amount | Check Date | Check Number | Check Amount | Payor | Check Memos | Comments | Less Cash |
| | | 04/07/92 | 184 | $7,500.00 | George A. Maciel | | from acct 300466 | |
| 04/24/92 | $950.00 | 04/16/92 | 8946 | $450.00 | San Jose Commercial Tire | | Payable to Alviso Rock/HK Racing | |
| | | 04/01/92 | 3563 | $500.00 | PJ Vierra | Rent on Boscell April | | |
| 05/07/92 | $740.00 | 05/07/92 | | $900.00 | Alviso Rock Inc. | IH 9370 Hood | | |
| | | | | $(160.00) | Less Cash | | | $(160.00) |
| 05/15/92 | $621.00 | 12/31/91 | 1895 | $410.00 | Cars Inc. | | Payable to Howard Kaeding | |
| | | 05/09/92 | 4930 | $36.00 | Mary Sue Schriver | | | |
| | | | | $175.00 | Currency | | | |
| 06/04/92 | $530.00 | 05/21/92 | 2207 | $210.00 | Cars Inc. | | Payable to Alviso Rock | |
| | | 05/18/92 | 7159 | $100.00 | Northern Auto Racing Club Inc | | Payable to George Maciel/Alviso Rock | |
| | | | | $220.00 | Currency | | | |
| 06/12/92 | $861.00 | 06/05/92 | 9440 | $600.00 | San Jose Commercial Tire | | Payable to HK Racing | |
| | | 06/08/92 | 7346 | $100.00 | Northern Auto Racing Club Inc | | Payable to George Maciel/Alviso Rock | |
| | | | | $161.00 | Currency | | | |
| 07/06/92 | $814.00 | 06/08/92 | 3652 | $200.00 | West Coast Aggregates Inc. | | Payable: Alviso Rock/HK Racing | |
| | | 06/25/92 | 397 | $614.00 | San Jose Equipment Sales | #291 Repairs | Payable: Newark Truck & Body/Bounced | |
| 07/23/92 | $350.00 | 07/13/92 | 7590 | $150.00 | Northern Auto Racing Club Inc | | Payable to George Maciel/Alviso Rock | |
| | | 07/08/92 | 3757 | $200.00 | West Coast Aggregates Inc. | | Payable to George Maciel/Alviso Rock | |
| 08/04/92 | $820.00 | 07/29/92 | 2422 | $820.00 | Cars Inc. | | Payable to Alviso Rock | |
| 08/25/92 | $1,415.00 | 07/31/92 | 1600 | $200.00 | Louis Bewley | Rent | | |
| | | 07/24/92 | 1599 | $200.00 | Louis Bewley | Rent | | |
| | | 08/14/92 | 1607 | $200.00 | Louis Bewley | Rent | | |
| | | 08/07/92 | 3508 | $500.00 | Linda Ventura | Aug. Rent | | |
| | | 08/25/92 | | $315.00 | Currency | | | |
| 09/08/92 | $1,550.00 | 09/02/92 | 1069 | $1,350.00 | San Jose Commercial Tire | June, July, Aug | Payable to Alviso Rock/HK Racing | |
| | | 08/28/92 | 1618 | $200.00 | Louis Bewley | Rent | | |
| 09/23/92 | $200.00 | 09/18/92 | 1632 | $200.00 | Louis Bewley | Rent | | |
| 10/09/92 | $325.00 | 09/19/92 | 23995 | $75.00 | Silver Dollar Speedway | E Main | | |
| | | 09/19/92 | 23929 | $50.00 | Silver Dollar Speedway | F Main | | |
| | | 09/17/92 | 3947 | $200.00 | West Coast Aggregates Inc. | | Payable to Alviso Rock/HK Racing | |
| 11/05/92 | $2,517.96 | 10/30/92 | 7311 | $2,517.96 | George Maciel Trucking Inc | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **THE BANK OF MILPITAS ACCOUNT 512-001-102605 "ALVISO ROCK/HK RACING"** | | | | | | | | |
| **DEPOSITS - 1992** | | | | | | | | |
| | | | | | | | | |
| *Deposit Date* | *Deposit Amount* | *Check Date* | *Check Number* | *Check Amount* | *Payor* | *Check Memos* | *Comments* | *Less Cash* |
| 11/10/92 | $5,000.00 | 11/10/92 | CM | $5,000.00 | Transfer | | from acct 1300466 | |
| 12/07/92 | $100.00 | 11/30/92 | 2992 | $100.00 | Cars Inc. | | Payable to Alviso Rock | |
| 12/23/92 | $3,500.00 | 12/23/92 | CM | $3,500.00 | Telephone Transfer | | from acct 1300466 | |
| **TOTAL** | **$31,493.96** | | | **$31,493.96** | | | | **$(160.00)** |
| | | | | | | | | |

**APPENDIX "E"**

| Deposit Date | Deposit Amount | Check Date | Check Number | Check Amount | Payor | Check Memos | Comments |
|---|---|---|---|---|---|---|---|
| **WELLS FARGO BANK  ACCOUNT 0108-363904  "GEORGE MACIEL/PETE VIVIANO"** | | | | | | | |
| **DEPOSITS - 1990** | | | | | | | |
| 01/05/90 | $750.00 | 12/30/89 | 3047 | $500.00 | P.J. Vierra & Sons | 1/1 to 2/1/90 | Payable: M&V Investment |
| | | 01/02/90 | 3765 | $250.00 | Charles A. Lamb | Rent | |
| 01/08/90 | $8,500.00 | 12/06/89 | 1102 | $8,500.00 | George A. Maciel | Boscell | from BM 0593 |
| 01/24/90 | $2,150.00 | 01/24/90 | 1117 | $2,150.00 | George A. Maciel | | from BM 0593 |
| 01/25/90 | $4,825.00 | 01/25/90 | 5662 | $4,825.00 | Tri City Truck Parts and Equip | Isit Cashier's Check | Payable to Cash |
| 02/01/90 | $500.00 | 01/29/90 | 3066 | $500.00 | P.J. Vierra & Sons | Rent 2-1 to 3-1-90 | Payable: M&V Investment |
| 02/06/90 | $8,400.00 | 02/02/90 | 17371 | $8,400.00 | P.S.B. Trucking Inc. | 2/90 Rent | |
| 02/14/90 | $2,600.00 | 02/14/90 | 104 | $2,600.00 | George A. Maciel | Cashier's Check | from BM 0466 |
| 02/26/90 | $3,528.00 | 02/22/90 | 11522 | $1,764.00 | Viviano Trucking | | Payable: Wells Fargo Bank |
| | | 02/20/90 | 1129 | $1,764.00 | George A. Maciel | For Lease Boscell | from BM 0593 |
| 03/08/90 | $8,900.00 | 02/28/90 | 3084 | $500.00 | P.J. Vierra & Sons | Rent | Payable: M&V Investment |
| | | 03/07/90 | 1143 | $8,400.00 | George A. Maciel | Bryant | from BM 200593 |
| 03/16/90 | $250.00 | 02/01/90 | 1002 | $250.00 | Charles A. Lamb | Rent | |
| 04/05/90 | $8,650.00 | 04/03/90 | 1094 | $250.00 | Charles A. Lamb | Rent | |
| | | 04/02/90 | 17726 | $8,400.00 | P.S.B. Trucking Inc. | | |
| 04/17/90 | $500.00 | 04/09/90 | 3112 | $500.00 | P.J. Vierra & Sons | Rent for 4-1 to 5-1 Boscell | |
| 04/17/90 | $15,954.84 | 04/16/90 | 11740 | $3,500.00 | Viviano Trucking | Boscell Prop Taxes | Payable to Cash |
| | | 04/17/90 | 171 | $12,454.84 | George A. Maciel | Boscell 88/89 Sup Ass | from BM 300466 |
| 04/19/90 | $30.00 | 04/19/90 | | $30.00 | Reimbursement of Overdraft Chg | | |
| 05/02/90 | $8,400.00 | 05/01/90 | 17903 | $8,400.00 | P.S.B. Trucking Inc. | | |
| 05/03/90 | $1,888.20 | 05/03/90 | 5844 | $1,888.20 | Tri City Truck Parts and Equip | AFCO | Payable to Cash |
| 05/04/90 | $500.00 | 05/02/90 | 3127 | $500.00 | P.J. Vierra & Sons | Rent for May on Boscell | Payable: M&V Investment |
| 06/29/90 | $7.50 | 06/29/90 | | $7.50 | Reimbursement of Service Chg | | |
| 06/29/90 | $15.00 | 06/29/90 | | $15.00 | Reimbursement of Service Chg | | |
| 07/05/90 | $100.00 | 07/05/90 | | $100.00 | Currency | | |
| 07/06/90 | $15.00 | 07/06/90 | | $15.00 | Reimbursement of Service Chg | | |
| **TOTAL** | **$76,463.54** | | | **$76,463.54** | | | |

APPENDIX "F"

| Bank Acct | Deposit Date | Check Date | Check Number | Check Amount | Payor | Check Memos | Comments |
|-----------|--------------|------------|--------------|--------------|-------|-------------|----------|
| **1990 DEPOSITS RESULTING FROM NON-TAXABLE ITEMS** | | | | | | | |
| BM300466 | 01/03/90 | 12/29/89 | 1298 | $10,000.00 | BAMA Equipment | Shareholder Draw | |
| BM300466 | 01/03/90 | 12/22/89 | 5551 | $1,024.15 | Alviso Rock Inc | | |
| BM300466 | 01/03/90 | 12/27/89 | 247 | $9,757.00 | Atherton & Stevens Trust Acct | Arbitration Award | |
| BM300466 | 01/03/90 | 12/27/89 | 3895 | $1,000.00 | George Maciel Trucking | Reimburse for DMV Fees | |
| WF363904 | 01/08/90 | 12/06/89 | 1102 | $8,500.00 | George A. Maciel | Boscell | from BM 0593 |
| WF363904 | 01/24/90 | 01/24/90 | 1117 | $2,150.00 | George A. Maciel | | from BM 0593 |
| WF363904 | 01/25/90 | 01/25/90 | 5662 | $4,825.00 | Tri City Truck Parts and Equip | Isit Cashier's Check | Payable to Cash |
| BM200593 | 02/14/90 | 02/06/90 | 9014592 | $4,500.00 | Taco Bravo | | Cashiers Check |
| WF363904 | 02/14/90 | 02/14/90 | 104 | $2,600.00 | George A. Maciel | Cashier's Check | from BM 0466 |
| BM300466 | 02/14/90 | 08/25/89 | 3259 | $4,447.40 | George Maciel Trucking | | Payable: Fred Isit |
| WF363904 | 02/26/90 | 02/20/90 | 1129 | $1,764.00 | George A. Maciel | For Lease Boscell | from BM 0593 |
| WF363904 | 02/26/90 | 02/22/90 | 11522 | $1,764.00 | Viviano Trucking | | Payable: Wells Fargo Bank |
| BM200593 | 03/08/90 | 03/06/90 | 8122797 | $1,936.02 | California Land Title Co. | Escrow 284613-LM | |
| WF363904 | 03/08/90 | 03/07/90 | 1143 | $8,400.00 | George A. Maciel | Bryant | from BM 200593 |
| BM200593 | 03/16/90 | 03/14/90 | 1370 | $1,000.00 | BAMA Equipment | | |
| BM200593 | 03/16/90 | | 83508 | $2.00 | Revlon Beauty Care | | |
| BM300466 | 03/20/90 | 03/20/90 | CM | $100,000.00 | Time Certificate of Deposit | | |
| BM200593 | 04/04/90 | 04/03/90 | 1412 | $1,000.00 | BAMA Equipment | | |
| BM200593 | 04/17/90 | 04/05/90 | 8123340 | $873.88 | California Land Title Co. | Escrow 287641-LM | |
| WF363904 | 04/17/90 | 04/16/90 | 11740 | $3,500.00 | Viviano Trucking | Boscell Prop Taxes | Payable to Cash |
| WF363904 | 04/17/90 | 04/17/90 | 171 | $12,454.84 | George A. Maciel | Boscell 88/89 Sup Ass | from BM 300466 |
| WF363904 | 04/19/90 | 04/19/90 | | $30.00 | Reimbursement of Overdraft Chg | | |
| BM102605 | 04/30/90 | 04/27/90 | 522 | $2,493.59 | George Maciel | Closing of Account | from WF 384835 |
| BM200593 | 04/30/90 | 04/19/90 | 22834 | $109.39 | Saratoga Savings & Loan Assoc | | |
| BM200593 | 04/30/90 | 04/20/90 | 8123737 | $44.42 | California Land Title Co. | Escrow 284613-LM | |
| WF363904 | 05/03/90 | 05/03/90 | 5844 | $1,888.20 | Tri City Truck Parts and Equip | AFCO | Payable to Cash |
| BM300466 | 05/09/90 | 05/03/90 | 1461 | $1,000.00 | BAMA Equipment | | |
| BM102605 | 05/18/90 | 05/17/90 | 1493 | $1,200.00 | BAMA Equipment | Race #4,5,6,7,8 & 9 | |
| BM300466 | 05/24/90 | 05/18/90 | 3145 | $14,017.00 | US Treasury | | |
| BM300466 | 06/11/90 | 04/27/90 | 179 | $25,000.00 | Cashier's Ck | | |
| BM300466 | 06/11/90 | 05/16/90 | 249 | $47,495.18 | Cashier's Ck | | |
| WF363904 | 06/29/90 | 06/29/90 | | $7.50 | Reimbursement of Service Chg | | |

**1990 DEPOSITS RESULTING FROM NON-TAXABLE ITEMS**

| Bank Acct | Deposit Date | Check Date | Check Number | Check Amount | Payor | Check Memos | Comments |
|---|---|---|---|---|---|---|---|
| WF363904 | 06/29/90 | 06/29/90 | | $15.00 | Reimbursement of Service Chg | | |
| WF363904 | 07/06/90 | 07/06/90 | | $15.00 | Reimbursement of Service Chg | | |
| BM300466 | 07/10/90 | 07/03/90 | 1585 | $1,000.00 | BAMA Equipment | | |
| BM200593 | 08/15/90 | 08/13/90 | 1641 | $1,000.00 | BAMA Equipment | | |
| BM102605 | 09/14/90 | 09/14/90 | 1277 | $300.00 | George A. Maciel | Sprint Car #69 | from acct 200593 |
| BM200593 | 09/14/90 | 09/05/90 | 1124 | $2,000.00 | Merced Rosales | | |
| BM300466 | 09/14/90 | 09/05/90 | 3981 | $652.51 | Daniel Hernandez | Sept | |
| BM300466 | 10/12/90 | 10/12/90 | CM | $40,000.00 | Unknown | | |
| BM200593 | 10/17/90 | 10/04/90 | 4000 | $653.00 | Daniel Hernandez Jr. | | |
| BM300466 | 10/23/90 | | | $1,200.00 | Unknown | | ABA 11-35 |
| BM300466 | 11/01/90 | 10/20/90 | 1527 | $1,200.00 | Hillview Engineering Corp | | "Insuff Funds" - ck bounced |
| BM102605 | 11/08/90 | 11/08/90 | | $30.00 | Reversal of Service Charge | | |
| BM300466 | 11/14/90 | 11/07/90 | 4065 | $653.00 | Daniel Hernandez | | |
| BM300466 | 11/14/90 | 11/09/90 | 1760 | $1,000.00 | BAMA Equipment | | |
| BM300466 | 11/23/90 | 11/21/90 | 566 | $3,000.00 | Lavrar Trucking | | Loan |
| BM102605 | 11/23/90 | 11/23/90 | | $131.75 | George A. Maciel | | from acct 300466 |
| BM200593 | 12/13/90 | 11/30/90 | 4075 | $653.00 | Daniel Hernandez Jr. | | |
| | | **1990 TOTAL** | | **$328,286.83** | | | |

**1991 DEPOSITS RESULTING FROM NON-TAXABLE ITEMS**

| Bank Account | Deposit Date | Check Date | Check Number | Check Amount | Payor | Check Memos | Comments |
|---|---|---|---|---|---|---|---|
| BM300466 | 01/17/91 | 01/05/91 | 4116 | $653.00 | Daniel Hernandez Jr. | | |
| BM200593 | 02/20/91 | 02/06/91 | 4130 | $653.00 | Daniel Hernandez, Jr. | | |
| BM300466 | 02/25/91 | 02/25/91 | 1842 | $1,000.00 | BAMA Equipment | October 1990 | |
| BM300466 | 02/25/91 | 02/25/91 | 1841 | $11,300.00 | BAMA Equipment | Reimburse Reliance End Dump | |
| BM200593 | 03/13/91 | 03/11/91 | 4136 | $653.00 | Daniel Hernandez, Jr. | | |
| BM300466 | 03/28/91 | 03/25/91 | | $6,250.00 | Marcelo Rodriguez Jr. | | |
| BM200593 | 03/28/91 | | | $1,000.00 | Unknown | | Math Error? 3/28 DM of $1,000 |
| BM102605 | 04/04/91 | 04/04/91 | 1430 | $310.00 | George A. Maciel | | from acct 200593 |
| BM102605 | 04/04/91 | 04/04/91 | CM | $12.00 | Reject Charge Rev. | | |

**1991 DEPOSITS RESULTING FROM NON-TAXABLE ITEMS**

| Bank Account | Deposit Date | Check Date | Check Number | Check Amount | Payor | Check Memos | Comments |
|---|---|---|---|---|---|---|---|
| BM300466 | 04/22/91 | 04/22/91 | CM | $4,000.00 | Reversal of 4/19/91 Transfer | | |
| BM200593 | 04/26/91 | 04/05/91 | 306 | $200.00 | Merced Rosales | | |
| BM200593 | 04/26/91 | 04/10/91 | 4160 | $653.00 | Daniel Hernandez, Jr. | | |
| BM300466 | 05/09/91 | 04/09/91 | 40697 | $3,721.86 | Adriatic Insurance Company | Collision Final | Redeposit |
| BM200593 | 05/21/91 | 05/15/91 | 33460 | $122.95 | Stewart Title of California | | |
| BM102605 | 05/28/91 | 05/28/91 | CM | $12.00 | Reject Charge Rev. | | |
| BM102605 | 05/29/91 | | CM | $1,500.00 | Phone Transfer | | from acct 300466 |
| BM200593 | 06/13/91 | 06/10/91 | 4202 | $653.00 | Daniel & Cecelia Hernandez Jr. | | |
| BM200593 | 07/09/91 | 07/01/91 | 4207 | $653.00 | Daniel & Cecelia Hernandez Jr. | | |
| BM300466 | 07/18/91 | 07/12/91 | 126 | $100.00 | Collette M. Krull | Loan | |
| BM200593 | 08/05/91 | | | $1,000.00 | Unknown | | Returned ck 8/9 DM $1,000 |
| BM102605 | 08/13/91 | 08/13/91 | 1056 | $500.00 | GM Investments | Sprint | from acct 3171 |
| BM303171 | 09/06/91 | 09/06/91 | DM | $12.00 | Reversal of Ck Charge | | |
| BM102605 | 09/09/91 | 09/07/91 | 163 | $2,000.00 | George A. Maciel | | |
| BM300466 | 09/24/91 | 09/02/91 | 4033 | $653.00 | Daniel Hernandez Jr. | | |
| BM300466 | 09/24/91 | 09/13/91 | | $11,613.00 | United States Treasury | Tax Refund | |
| BM300466 | 09/24/91 | 09/23/91 | 1416 | $1,000.00 | Daniel Parquette | Aug & Sept Rent | May have bounced - 10/1 DM |
| BM200593 | 10/08/91 | 09/23/91 | 1416 | $1,000.00 | Daniel Parquette | Aug & Sept Rent | "Insuff Funds" - debit memo in acct 0466 |
| BM303171 | 10/16/91 | 10/10/91 | 4005 | $653.00 | Daniel Hernandez | OOPS | |
| BM303171 | 10/16/91 | 10/11/91 | 1428 | $1,500.00 | Daniel Parquette | | check bounced |
| BM200593 | 11/22/91 | | 168907 | $150.00 | Electric & Gas Industries Asso | Refrigerator Rebate | |
| BM300466 | 12/30/91 | 12/14/91 | 4306 | $653.00 | Daniel Hernandez Jr. | | |
| BM300466 | 12/30/91 | 12/30/91 | CM | $20,000.00 | Telephonic Transfer | | From BM 0593 |
| | **1991 TOTAL** | | | **$74,180.81** | | | |

**1992 DEPOSITS RESULTING FROM NON-TAXABLE ITEMS**

| Bank Account | Deposit Date | Check Date | Check Number | Check Amount | Payor | Check Memos | Comments |
|---|---|---|---|---|---|---|---|
| BM300466 | 01/23/92 | 01/11/92 | 4338 | $653.00 | Daniel Hernandez | | |
| BM300466 | 02/06/92 | 02/07/92 | 685 | $700.00 | Ricky or Ana Flores | | Bounced - 2/14/92 DM |
| BM102605 | 02/12/92 | 02/10/92 | 1077 | $3,500.00 | GM Investments | Advertising Sprint Car | from acct 303171 |

| 1992 DEPOSITS RESULTING FROM NON-TAXABLE ITEMS | | | | | | | |
|---|---|---|---|---|---|---|---|
| Bank Account | Deposit Date | Check Date | Check Number | Check Amount | Payor | Check Memos | Comments |
| BM200593 | 02/12/92 | 02/10/92 | 4359 | $653.00 | Daniel Hernandez Jr. | | |
| BM303171 | 02/12/92 | 02/10/92 | 180 | $3,500.00 | George A. Maciel | | from acct 300466 |
| BM200593 | 02/26/92 | 02/25/92 | 216 | $500.00 | Collette Krull | | |
| BM300466 | 03/03/92 | 03/03/92 | CM | $100,000.00 | Balance from COD #001291269 | | |
| BM300466 | 03/04/92 | 03/02/92 | 4373 | $653.00 | Daniel Hernandez | | |
| BM300466 | 03/04/92 | 03/03/92 | 5437 | $136,945.68 | Cashier's Ck to Santa Clara Title Co | "Not used for intended purpose" | |
| BM200593 | 04/01/92 | 03/11/92 | 61741206 | $369.44 | AT&T | Residence Service Refund | BM200593 |
| BM102605 | 04/07/92 | 04/07/92 | 184 | $7,500.00 | George A. Maciel | | from acct 300466 |
| BM200593 | 04/16/92 | 04/10/92 | 4395 | $653.00 | Daniel Hernandez Jr. | | |
| BM200593 | 04/21/92 | 04/21/92 | CM | $4,000.00 | Dad's Enterprises | Transfer | |
| BM200593 | 05/15/92 | 05/10/92 | 4417 | $653.00 | Daniel Hernandez Jr. | | |
| BM300466 | 05/15/92 | 03/20/92 | 8140454 | $7,657.22 | California Land Title Co. | Escrow No. 331486-LM | |
| BM300466 | 06/03/92 | 06/03/92 | CM | $100,000.00 | Balance from #01-201318 | | |
| BM303171 | 06/12/92 | 06/06/92 | 4433 | $653.00 | Daniel and Cecelia Hernandez | | |
| BM102605 | 07/06/92 | 06/25/92 | 397 | $614.00 | San Jose Equipment Sales | #291 Repairs | Payable: Newark Truck & Body/Bounced |
| BM300466 | 07/23/92 | 07/10/92 | 4466 | $653.00 | Daniel Hernandez | | |
| BM300466 | 08/25/92 | 08/10/92 | 4493 | $653.00 | Daniel Hernandez | | |
| BM300466 | 09/08/92 | 09/08/92 | DM | $0.17 | Deposit Correction | | |
| BM300466 | 09/23/92 | 09/11/92 | | $16,895.00 | United States Treasury | Tax Refund | |
| BM300466 | 09/23/92 | 09/12/92 | 4534 | $653.00 | Daniel Hernandez | That's All Folks! Thank You | |
| BM300466 | 10/21/92 | 10/13/92 | 1135 | $10,381.17 | First American Title Insurance | Escrow No. 208810AM | |
| BM102605 | 11/10/92 | 11/10/92 | CM | $5,000.00 | Transfer | | from acct 1300466 |
| BM200593 | 12/07/92 | 12/05/92 | 879 | $700.00 | Ana Flores | | Bounced - 12/15/92 DM |
| BM102605 | 12/23/92 | 12/23/92 | CM | $3,500.00 | Telephone Transfer | | from acct 1300466 |
| | | 1992 TOTAL | | $407,639.68 | | | |